*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0202p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————



ERIC L. THOMPSON,

                *Plaintiff-Appellant,*

     *v.*

NORTH AMERICAN STAINLESS, LP,

                  *Defendant-Appellee.*

No. 07-5040

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 05-00002—Karen K. Caldwell, District Judge.

Argued: December 10, 2008

Decided and Filed: June 5, 2009

Before: BOGGS, Chief Judge; MARTIN, BATCHELDER, DAUGHTREY, MOORE,
COLE, CLAY, GILMAN, GIBBONS, ROGERS, SUTTON, COOK, McKEAGUE,
GRIFFIN, KETHLEDGE, and WHITE, Circuit Judges.

—————————————

## COUNSEL

**ARGUED:** David O'Brien Suetholz, SEGAL, LINDSAY & JANES, Louisville, Kentucky,
for Appellant. Leigh Gross Latherow, VanANTWERP, MONGE, JONES, EDWARDS &
McCANN, LLP, Ashland, Kentucky, for Appellee. Gail S. Coleman, U.S. EQUAL
EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amici Curiae.
**ON BRIEF:** David O'Brien Suetholz, Joseph Delano Wibbels, Jr., SEGAL, LINDSAY &
JANES, Louisville, Kentucky, for Appellant. Leigh Gross Latherow, Gregory L. Monge,
VanANTWERP, MONGE, JONES, EDWARDS & McCANN, LLP, Ashland, Kentucky,
for Appellee. Gail S. Coleman, U.S. EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Washington, D.C., Rae T. Vann, NORRIS, TYSSE, LAMPLEY & LAKIS,
LLP, Washington, D.C., Nelson D. Cary, Alexandra T. Schimmer, VORYS, SATER,
SEYMOUR & PEASE LLP, Columbus, Ohio, for Amici Curiae.

     GRIFFIN, J., delivered the opinion of the court, in which BOGGS, C. J.,
BATCHELDER, GILMAN, GIBBONS, SUTTON, COOK, McKEAGUE, and
KETHLEDGE, JJ., joined. ROGERS, J. (pp. 18-20), delivered a separate opinion
concurring in the result. MARTIN, J. (pp. 21-24), delivered a separate dissenting opinion,
in which DAUGHTREY, MOORE, COLE, CLAY, and WHITE, JJ., joined, with MOORE,
J. (pp. 25-33), joined by MARTIN, DAUGHTREY, COLE, CLAY, and WHITE, JJ., and
WHITE, J. (pp. 34-40), joined by Judge DAUGHTREY, also delivering separate dissenting
opinions.

———————————

**OPINION**

———————————

GRIFFIN, Circuit Judge.  The sole issue raised in this rehearing en banc is whether § 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), creates a cause of action for third-party retaliation for persons who have not personally engaged in protected activity.  After applying the plain and unambiguous statutory text, we join the Third, Fifth, and Eighth Circuit Courts of Appeal in holding that the authorized class of claimants is limited to persons who have personally engaged in protected activity by opposing a practice, making a charge, or assisting or participating in an investigation.  Because plaintiff Eric L. Thompson does not claim that he personally engaged in any protected activity, we affirm the judgment of the district court granting summary judgment in favor of defendant North American Stainless, LP.

I.

The relevant facts are recited in our vacated panel opinion, *Thompson v. North American Stainless, LP*, 520 F.3d 644, 645-46 (6th Cir. 2008), *reh. en banc granted, opinion vacated* (July 28, 2008):

> From February 1997 through March 2003, the plaintiff, Eric L. Thompson, worked as a metallurgical engineer for defendant North American Stainless, LP, the owner and operator of a stainless steel manufacturing facility in Carroll County, Kentucky.  Thompson met Miriam Regalado, currently his wife, when she was hired by the defendant in 2000, and the couple began dating shortly thereafter.  At the time of Thompson's termination, he and Regalado were engaged to be married, and their relationship was common knowledge at North American Stainless.

> According to the complaint, Regalado filed a charge with the Equal Employment Opportunity Commission (EEOC) in September 2002, alleging that her supervisors discriminated against her based on her gender.  On February 13, 2003, the EEOC notified North American Stainless of Regalado's charge.  Slightly more than three weeks later, on March 7, 2003, the defendant terminated Thompson's employment. Thompson alleges that he was terminated in retaliation for his then-fiancée's EEOC charge, while North American Stainless contends that performance-based reasons supported the plaintiff's termination.

Thompson filed a charge with the EEOC, which conducted an investigation and found "reasonable cause to believe that [the Defendant] violated Title VII." After conciliation efforts were unsuccessful, the EEOC issued a right-to-sue letter and Thompson filed a cause of action against North American Stainless in the Eastern District of Kentucky.

North American Stainless moved for summary judgment, contending that the plaintiff's claim, that his "relationship to Miriam Thompson [née Regalado] was the sole motivating factor in his termination," was insufficient as a matter of law to support a cause of action under Title VII. The district court granted the defendant's motion, holding that Thompson failed to state a claim under either the anti-discrimination provision contained in 42 U.S.C. § 2000e-2(a) or the anti-retaliation provision set forth in 42 U.S.C. § 2000e-3(a).

The plaintiff appeals from this judgment, contending that the anti-retaliation provision of Title VII prohibits an employer from terminating an employee based on the protected activity of his fiancée who works for the same employer. The EEOC has filed an *amicus curiae* brief in support of plaintiff's position.

## II.

We review de novo the district court's order granting summary judgment. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007). Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

## III.

When Congress enacted the Civil Rights Act of 1964, it created a new and limited cause of action for retaliation in the employment setting. The relevant language of the statute provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . *because he has opposed* any practice made an unlawful employment practice by this subchapter, or *because he has made a charge, testified, assisted, or participated* in any manner in an investigation, proceeding, or hearing under this subchapter.

Title VII of the Civil Rights Act of 1964, § 704(a), 42 U.S.C. § 2000e-3(a) (emphasis added).

Certainly it was Congress's prerogative to create – or refrain from creating – a federal cause of action for civil rights retaliation and to mold the scope of such legislation, making the boundaries of coverage either expansive or limited in nature: "Statutory rights and obligations are established by Congress, and it is entirely appropriate for Congress, in creating these rights and obligations, to determine in addition, who may enforce them and in what manner." *Davis v. Passman*, 442 U.S. 228, 240 (1979).

When we, in turn, are called upon to review and interpret Congress's legislation, "[i]t is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485 (1917). "If the words are plain, they give meaning to the act, and it is neither the duty nor the privilege of the courts to enter speculative fields in search of a different meaning." *Id*. at 490. Recognizing the consequences of unbridled judicial forays into the legislative sphere, the Supreme Court has admonished "'time and again that a legislature says in a statute what it means and means in a statute what it says there.'" *Arlington Cent. Sch. Dist. Bd. of Ed. v. Murphy*, 548 U.S. 291 (2006) (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249 (1992)). Accordingly, "[w]hen the statutory language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Id*. (internal citations and quotation marks omitted). *See also Robinson v. Shell Oil Co*., 519 U.S. 337, 340 (1997) ("[The courts'] inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent.") (internal citation and quotation marks omitted); *Rubin v. United States*, 449 U.S. 424, 430 (1981) ("When we find the terms of a statute unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances.").

In our view, the text of § 704(a) is plain in its protection of a limited class of persons who are afforded the right to sue for retaliation. To be included in this class, plaintiff must show that his employer discriminated against him "because *he has opposed* any practice made an unlawful employment practice by this subchapter, or because *he has made a charge, testified, assisted, or participated* in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (emphasis added).

Significantly, Thompson does not claim that he engaged in any statutorily protected activity, either on his own behalf or on behalf of Miriam Regalado. In Paragraph 13 of his complaint, Thompson alleges that "[d]efendant has intentionally retaliated against Plaintiff because his wife, Miriam Thompson, filed a charge with the [EEOC] based on gender discrimination prohibited by 42 U.S.C. § 2000e-2(a). *Plaintiff's relationship to Miriam Thompson was the sole motivating factor in his termination.*" (Emphasis added.) In his appellate brief to our three-judge panel, Thompson framed his "Statement of the Issue" on appeal as follows: "Whether § 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), prohibits an employer from terminating an individual in retaliation for the protected activity of his fiancée who also works for the employer." Further, he alleged in his "Statement of Facts" that "Thompson was terminated in retaliation for his fiancée's protected activity."

By application of the plain language of the statute, Thompson is not included in the class of persons for whom Congress created a retaliation cause of action because he personally did not oppose an unlawful employment practice, make a charge, testify, assist, or participate in an investigation. Nonetheless, with the support of the EEOC, he argues that the statute should be construed to include claimants who are "closely related [to] or associated [with]" a person who has engaged in protected activity. Thompson and the EEOC offer various reasons why we should disregard the text of the statute in favor of their public policy preferences. The primary contention is that a "narrow" interpretation of § 704(a) would create an "absurd" result. Further, they argue that we should defer to the EEOC's interpretation of the statute. These assertions are dependent upon the premise that the statutory language is ambiguous. It is not.

In essence, plaintiff and the EEOC request that we become the first circuit court to hold that Title VII creates a cause of action for third-party retaliation on behalf of friends and family members who have not engaged in protected activity. However, we decline the invitation to rewrite the law.

IV.

The central issue before this court is whether Thompson has asserted a proper cause of action under § 704(a) of Title VII – that is, whether he "is a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court" to enforce

legislatively created rights or obligations.  *Davis*, 442 U.S. at 239 n.18.[1]  It is well established that to prevail upon a Title VII retaliation claim, "a plaintiff must establish that:  (1) [he] engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action."  *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir. 2008).

The district court ruled correctly that Thompson failed to establish the first element because his complaint did not allege that he personally engaged in any sort of protected activity.  Instead, Thompson's retaliation claim is that he was punished for a discrimination complaint brought by his then-fiancée.  The district court reviewed the statutory text and held that, "under its plain language, the statute does not authorize a retaliation claim by a plaintiff who did not himself engage in protected activity."  We agree.

Previously, our only discussion of a similar issue had been limited to the dicta in *EEOC v. Ohio Edison Co.*, 7 F.3d 541 (6th Cir. 1993), and *Bell v. Safety Grooving &*

---

[1] Distinct from the question whether Thompson has asserted a cause of action under § 704(a), his *standing* to assert his Title VII retaliation claim is not at issue in this appeal.  *See Davis*, 442 U.S. at 239 n.18 (distinguishing the separate concepts of standing and cause of action and noting that "*standing* is a question of whether a plaintiff is sufficiently adversary to a defendant to create an Art. III case or controversy, or at least to overcome prudential limitations on federal-court jurisdiction . . . .").  The remedial section of Title VII, 42 U.S.C. § 2000e-5(f)(1), empowers a "person claiming to be aggrieved" to bring a civil action to enforce the prohibitions against unlawful employment practices contained in the substantive provisions of the statute.  "What it means to be 'aggrieved' is a question of standing . . . ." *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 185 (2d Cir. 2001).

There is no question that "[t]his Court has taken a broad view of standing in Title VII actions." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 517 (6th Cir. 1976); *see also Christopher v. Stouder Mem. Hosp.*, 936 F.2d 870, 876 (6th Cir. 1991) ("The fact that [§ 2000e-5] purports to provide remedies for a class broader than direct employees is a strong indication that the proscriptions contemplated by [§ 2000e-3] reach beyond the immediate employment relationship.") (quoting *Sibley Mem. Hosp. v. Wilson*, 488 F.2d 1338, 1341 (D.C. Cir. 1973)).  We have held that the "person claiming to be aggrieved" language of § 2000e-5 shows a congressional intent to define standing under Title VII as broadly as is permitted by Article III of the Constitution.  *EEOC v. Bailey Co., Inc.*, 563 F.2d 439, 452-54 (6th Cir. 1977); *Senter*, 532 F.2d at 517.

Defendant does not challenge Thompson's standing as an "aggrieved" person, and we are satisfied in our own right that Thompson meets the "irreducible constitutional minimum of standing" required for his Title VII claim, *i.e.*, (1) he suffered an injury-in-fact (termination of his employment), (2) as a result of defendant's putatively illegal conduct, and (3) it is possible, instead of merely speculative, that his injury is redressable.  *Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Michigan*, 470 F.3d 286, 291-92 (6th Cir. 2006).

*Grinding, L.P.*, 107 F. App'x 607 (6th Cir. 2004) (unpublished).**2** However, neither of these cases resolved the present question. In *Ohio Edison*, we held that an employee may engage vicariously in protected activity by and through the actions of his agent, and, in *Bell,* we held that the plaintiff's non-specific complaints to management were insufficient to trigger protection for him in connection with his girlfriend's EEOC discrimination charge.

Although we have not addressed directly the precise issue at hand, the Third, Fifth, and Eighth Circuit Courts of Appeal have unanimously rejected such third-party retaliation claims.

In *Holt v. JTM Industries*, 89 F.3d 1224 (5th Cir. 1996), a former employee claimed that he was fired because his wife, who worked for the same company, filed a complaint under the Age Discrimination in Employment Act ("ADEA").**3** The plaintiff in *Holt* relied upon *De Medina v. Reinhardt*, 444 F. Supp. 573 (D.D.C. 1978), in support of his position that protecting one spouse from retaliation for the other spouse's protected complaint was necessary to preserve the intent of Congress. *Holt*, 89 F.3d at 1226. The Court of Appeals for the Fifth Circuit rejected this argument, reasoning that while such a holding "might eliminate the risk that an employer will retaliate against an employee for their spouse's protected activities," it would "contradict the plain language of the statute and will rarely be necessary to protect employee spouses from retaliation." *Id*. at 1226.

The *Holt* court "recognize[d] that there is a possible risk that an employer will discriminate against a complaining employee's relative or friend in retaliation for the complaining employee's actions," but concluded that "the language that Congress has employed in [the ADEA] will better protect employees against retaliation than we could by trying to define the types of relationships that should render automatic standing under

---

**2**Unpublished opinions of this court are not precedentially binding under the doctrine of stare decisis. *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007).

**3**The test for retaliation under the ADEA is the same as the test for Title VII retaliation. *Compare Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992) (elements of ADEA retaliation claim) *with Ohio Edison*, 7 F.3d at 543 (elements of Title VII retaliation claim); *see also* 29 U.S.C. § 623(d).

[the ADEA]." *Id.* at 1227.  The court noted that the plain language of the statute will protect most close relationships because

> [i]n most cases, the relatives and friends who are at risk for retaliation will have participated *in some manner* in a co-worker's charge of discrimination.  The plain language of [the ADEA] will protect these employees from retaliation for their protected activities.  However, when an individual, spouse or otherwise, has not participated "in any manner" in conduct that is protected by the ADEA, we hold that he does not have automatic standing to sue for retaliation under [the ADEA] simply because his spouse has engaged in protected activity.

*Id.* (footnote omitted).**[4]**

In Holt's case, the evidence did not establish that he participated in his wife's protected activities or that he opposed his employer's alleged discriminatory practice. *Holt*, 89 F.3d at 1227.  "At best, [Holt] was a passive observer of [his wife's] protected activities." *Id.*  The Fifth Circuit therefore concluded that he was not entitled to sue for retaliation under the ADEA.  *Id.*

The Eighth Circuit employed a similar rationale in *Smith v. Riceland Foods, Inc.*, 151 F.3d 813 (8th Cir. 1998).  The plaintiff in *Smith* alleged that he was discharged in retaliation for the filing of a discrimination charge by a female employee who lived with him.  He argued in pertinent part that he was not required to show that he personally engaged in protected activity in order to establish a prima facie case of retaliation under Title VII and urged the court to expand the protection of the statute "to prohibit employers from taking adverse action against employees whose spouses or significant others have engaged in statutorily protected activity against the employer." *Id.* at 819. The court rejected such a construction, concluding that it "is neither supported by the plain language of Title VII nor necessary to protect third parties, such as spouses or significant others, from retaliation." *Id.* (citing *Holt*, 89 F.3d at 1226-27).  "Title VII already offers broad protection to such individuals by prohibiting employers from retaliating against employees for 'assist[ing] or participat[ing] in any manner' in a

---

**[4]**To the extent that the *Holt* court characterized the viability of the plaintiff's claim as an issue of "standing," rather than whether the prima facie elements of a cause of action had been established, we disagree with its analysis. *See* text at note 2, *supra*; *Holt*, 89 F.3d at 1228-30 (Dennis, J., dissenting).

proceeding under Title VII.  Accordingly, we hold that a plaintiff bringing a retaliation claim under Title VII *must establish that []he personally engaged in the protected conduct*."  *Id*. (emphasis added).

In *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561 (3d Cir. 2002), the Court of Appeals for the Third Circuit addressed the issue of third-party retaliation in comparable circumstances.  The plaintiff sued under the Americans with Disabilities Act ("ADA"), the ADEA, and a Pennsylvania statute, alleging that he was fired in retaliation for his father's discrimination complaint filed against their joint employer.  As a preliminary matter, the *Fogleman* court noted that the anti-retaliation provisions of the ADA and the ADEA are nearly identical to each other and to the anti-retaliation provision of Title VII.  *Id*. at 567 (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)).  Thus, the "precedent interpreting any one of these statutes is equally relevant to interpretation of the others."  *Id*.  The *Fogleman* court emphatically rejected the notion of ambiguity:

> The plain text of the anti-retaliation provisions requires that the person retaliated against also be the person who engaged in the protected activity:  Each statute forbids discrimination against an individual because "such individual" has engaged in protected conduct.  By their own terms, then, the statutes do not make actionable discrimination against an employee who has not engaged in protected activity.  Read literally, the statutes are unambiguous – indeed, it is hard to imagine a clearer way of specifying that the individual who was discriminated against must also be the individual who engaged in protected activity.

*Id*. at 568.[5]

The Third Circuit conceded that the case "presents a conflict between a statute's plain meaning and its general policy objectives," but held that when presented with such a conflict, respect for the constitutional separation of powers required it to implement the statutory text.  *Id*. at 569.  The court also rejected the notion that enforcement of the plain meaning of the statute would lead to dire results and, in fact, stated that there "are

---

[5]The EEOC filed an amicus brief in *Fogleman* and unsuccessfully raised the same arguments before the Third Circuit that it makes in the present case.  *See* Brief of the EEOC as Amicus Curiae in Support of the Appellant, *Fogleman v. Mercy Hosp*., 283 F.3d 561 (3d Cir. 2002) (No. 00-2263), *available at* 2001 WL 34119171.

at least plausible policy reasons why Congress might have intended to exclude third-party retaliation claims." *Id*. For instance, Congress may have thought that friends or relatives who would be at risk of retaliation typically would have participated in some manner in the protected discrimination charge. *Id*. "If this is true, then the occurrence of pure third-party retaliation will be rare, so that not allowing claims to proceed in these few instances would not necessarily 'defeat the plain purpose' of the anti-discrimination laws." *Id*. (quoting *Bob Jones Univ. v. United States*, 461 U.S. 574, 586 (1983)). Congress also may have feared that allowing third-party retaliation claims would "open the door to frivolous lawsuits and interfere with an employer's prerogative to fire at-will employees." *Id*. at 570.

In sum, no circuit court of appeals has held that Title VII creates a claim for third-party retaliation in circumstances where the plaintiff has not engaged personally in any protected activity. Although plaintiff and the EEOC argue that the language of § 704(a) is ambiguous and that enforcement of the statutory text will lead to absurd results, we disagree, as do the Third, Fifth, and Eighth Circuits, which have soundly rejected such a cause of action.[6]

---

[6] *See also Rainer v. Refco, Inc*., 464 F. Supp. 2d 742 (S.D. Ohio 2006) (holding that the plaintiff employee's Title VII retaliation claim was not cognizable where he did not allege that he engaged in protected activity, but rather claimed that he was terminated because his co-worker mother opposed what she believed to be unlawful sex discrimination in employment); *Singh v. Green Thumb Landscaping, Inc*., 390 F. Supp. 2d 1129 (M.D. Fl. 2005) (holding that a former employee did not have a cause of action for alleged retaliation under Title VII based solely on his close association with his co-worker wife who engaged in protected activity); *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc*., 241 F. Supp. 2d 1123 (D. Kan. 2002) (rejecting third-party retaliation claim under Title VII where the plaintiff alleged that the defendant retaliated against him based on the protected activity of his family members). *But see Gonzalez v. New York State Dept. of Corr. Servs*., 122 F. Supp. 2d 335, 346-47 (N.D. N.Y. 2000) (permitting third-party Title VII retaliation claim by employee who alleged that she suffered adverse employment action because of her husband's complaints of discrimination against common employer); *EEOC v. Nalbandian Sales, Inc*., 36 F. Supp. 2d 1206 (E.D. Cal. 1998) (holding that the plaintiff's claim that his former employer refused to rehire him in retaliation for discrimination charge filed by the employee's sister was actionable under Title VII's anti-retaliation provision); *De Medina*, 444 F. Supp. 573 (holding that Title VII prohibited retaliation against the plaintiff employee in reprisal for the protected activities of her spouse).

V.

A.

The Supreme Court's recent decisions addressing retaliation claims do not require that we alter our analysis or change our conclusion. In *Crawford v. Metro. Gov't of Nashville and Davidson County, Tenn.*, — U.S. — , 129 S. Ct. 846 (2009), the Court held that the protection of the opposition clause of § 704(a) extends to an employee who was terminated after she testified involuntarily in an internal investigation of alleged sexual harassment. The plaintiff "did 'not claim to have instigated or initiated any complaint prior to her participation in the investigation, nor did she take any further action following the investigation and prior to her firing.'" 129 S. Ct. at 850 (quoting *Crawford v. Metro. Gov't of Nashville and Davidson County, Tenn.*, 211 F. App'x 373, 376 (6th Cir. 2006)). Rather, she simply cooperated in the investigation, responded to questions posed by her employer and, in doing so, testified unfavorably against a supervisor who was the subject of the investigation triggered by another coworker's complaints.

The Court abrogated this Circuit's view that the opposition clause "'demands active, consistent "opposing" activities to warrant . . . protection against retaliation'" and that an employee must "instigat[e] or initiat[e]" a complaint to be protected under § 704(a). *Id.* at 851 (quoting *Crawford*, 211 F. App'x at 376 (citation and internal quotation marks omitted)). Instead, the Court held that in this context, the "ordinary meaning" of the undefined statutory term "oppose" should be utilized, which includes the definitions "confront[ing]," "resist[ing]," and "withstand[ing]" discriminatory conduct; or, "to be hostile or adverse to, as in opinion." *Id.* (quoting Webster's New International Dictionary 1710 (2d ed. 1958) and Random House Dictionary of the English Language 1359 (2d ed. 1987)). The Court explained:

> "Oppose" goes beyond "active, consistent" behavior in ordinary discourse, where we would naturally use the word to speak of someone who has taken no action at all to advance a position beyond disclosing it. . . . There is . . . no reason to doubt that a person can "oppose" by responding to someone else's questions just as surely as by provoking the

discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.

*Id.* at 851. The Court concluded that:

[t]he statement Crawford says she gave to [her employer] is thus covered by the opposition clause, as an ostensibly disapproving account of sexually obnoxious behavior toward her by a fellow employee, an answer she says antagonized her employer to the point of sacking her on a false pretense. Crawford's description of the louche goings-on would certainly qualify in the minds of reasonable jurors as "resist[ant]" or "antagoni[stic]" to [the supervisor's] treatment, if for no other reason than the point argued by the Government and explained by an EEOC guideline: "When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication" virtually always "constitutes the employee's *opposition* to the activity." Brief for United States as *Amicus Curiae* 9 (citing 2 EEOC Compliance Manual §§ 8-II-B(1), (2), p. 614:0003 (Mar. 2003)); see also *Fed. Express Corp. v. Holowecki*, 128 S. Ct. 1147 (2008) (explaining that EEOC compliance manuals "reflect 'a body of experience and informed judgment to which courts and litigants may properly resort for guidance'" (quoting *Bragdon v. Abbott*, 524 U.S. 624 (1998)).

*Id*. at 850-51.

The Court reasoned that to limit the protection of § 704(a) to "active, consistent" behavior would undermine the primary objective of the statute of avoiding harm to employees, because "[i]f it were clear law that an employee who reported discrimination in answering an employer's questions could be penalized with no remedy, prudent employees would have a good reason to keep quiet about Title VII offenses against themselves or against others." *Id*. at 852.

However, *Crawford's* reach does not extend to the present circumstances. As Justice Alito accurately noted in his concurring opinion in *Crawford*, "[t]he question whether the opposition clause shields employees who do not communicate their views to their employers through purposive conduct is not before us in this case." *Crawford*, 129 S. Ct. at 855 (Alito, J., concurring). As he further opined, to extend the Court's holding beyond employees who testify in internal investigations or engage in analogous

purposive conduct "would have important practical implications" and "would open the door to retaliation claims by employees who never expressed a word of opposition to their employers" – exactly the conundrum presented in the instant case. *Id*. at 854.

Indeed, the present factual circumstances are even further removed from *Crawford*. As we have emphasized, Thompson does not allege in his complaint that he *personally* engaged in *any* statutorily protected activity or "opposition" to discrimination.[7] Moreover, as Judge Moore concedes in her dissent, "[i]t does not appear that Thompson himself informed any of his supervisors that he aided Regalado with filing her complaint." (Moore, J., dissenting, p. 7 n.7).[8] Thus, even in the wake of *Crawford*, Thompson has failed to raise a genuine issue of material fact that he engaged in protected activity by personally "opposing" a discriminatory practice under Title VII's anti-retaliation provision.

## B.

In *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), the Court settled a circuit court split regarding the scope of Title VII's anti-retaliation provision, specifically, the reach of its phrase "discriminate against": "Does that

---

[7]In dissent, Judge Moore advocates an issue that has not been pled, argued, or presented. She contends that, despite plaintiff's admissions to the contrary, had plaintiff anticipated the Supreme Court's *Crawford* decision, he may have pled, argued, and appealed an issue regarding his alleged personal protected activity. However, plaintiff has forfeited the issue. The sole question raised and decided in the vacated panel opinion signed by Judge Moore for which rehearing en banc was granted is "[w]hether § 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), prohibits an employer from terminating an individual in retaliation for the protected activity of his fiancee who also works for the employer." (Plaintiff-Appellant's Brief, "Statement of the Issue."). In the panel opinion, Judge Moore and Judge Tarnow framed the issue and their holding as follows:

> We are asked whether section 704(a)'s protections extend to persons not expressly described in the statute. Specifically, does Title VII prohibit employers from taking retaliatory action against employees not directly involved in protected activity, but who are so closely related to or associated with those who are directly involved, that it is clear that the protected activity motivated the employer's action? As such conduct would undermine the purposes of Title VII, we hold that such retaliatory action is prohibited.

*Thompson v. North Am. Stainless, LP*, 520 F.3d 644, 646 (6th Cir. 2007), reh'g en banc granted, opinion vacated (July 28, 2008).

[8]As we have noted, an essential element of a prima facie case of retaliation is that the plaintiff's exercise of his protected rights was known to the defendant in order to establish the requisite causal connection between the opposition and the adverse action at issue. *Martin*, 548 F.3d at 412.

provision confine actionable retaliation to activity that affects the terms and conditions of employment? And how harmful must the adverse actions be to fall within its scope?" *Burlington Northern*, 548 U.S. at 57. The Court answered these questions as follows:

> We conclude that the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace. We also conclude that the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

*Id.*

In *Burlington Northern*, the petitioner-employer suspended an employee without pay for insubordination, but later rescinded the suspension and awarded her back pay. The employee alleged that the employer's actions were in retaliation for her complaints about gender discrimination in the workplace. Noting that Title VII's substantive provision, § 703(a), protects an individual only from employment-related discrimination, the employer argued that § 704(a) should be read *in para materia* with § 703(a) to similarly require a link between the challenged retaliatory action and the terms, conditions, or status of employment. *Id.* at 61.

In rejecting the employer's contention, the Court scrutinized carefully the statutory language of the two provisions and found that they differed in significant respects. *Id.* Unlike § 703(a), the anti-retaliation provision does not contain words limiting its scope to actions that affect employment or alter the conditions of the workplace. *Id.* at 62. Applying statutory construction principles, the Court presumed that "where words differ as they differ here, 'Congress acts intentionally and purposely in the disparate inclusion or exclusion,'" *id.* at 63 (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)), and therefore concluded that the substantive and anti-retaliation provisions are not coterminous:

> [T]he two provisions differ not only in language but in purpose as well. The anti-discrimination provision seeks a workplace where individuals

are not discriminated against because of their racial, ethnic, religious, or gender-based status. The anti-retaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees. The substantive provision seeks to prevent injury to individuals based on who they are, *i.e.*, their status. The anti-retaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct.

* * *

[O]ne cannot secure the second objective by focusing only upon employer actions and harm that concern employment and the workplace. Were all such actions and harms eliminated, the anti-retaliation provision's objective would *not* be achieved. An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm *outside* the workplace. A provision limited to employment-related actions would not deter the many forms that effective retaliation can take. Hence, such a limited construction would fail to fully achieve the anti-retaliation provision's "primary purpose," namely, "[m]aintaining unfettered access to statutory remedial mechanisms." *Robinson*, 519 U.S. at 346.

*Id*. at 63-64 (internal citations omitted).

The Court concluded that "purpose reinforces what language already indicates, namely, that the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Id*. at 64.

Thompson argues that, in light of the Court's determination in *Burlington Northern* that the phrase "discriminated against" should be generously interpreted to preserve "unfettered access to [Title VII's] statutory remedial mechanisms," *id*. at 64, the statutory language at issue in the present case also should be construed broadly, for the same reason. Thompson asserts that if we engage in a restrictive literal reading of § 704(a) and require that the person filing the retaliation claim be the same person who either engaged in or assisted in the protected activity, this narrow construction will defy the statute's purpose and deter individuals from exercising their protected rights. We disagree.

First, we state the obvious – the Court in *Burlington Northern* addressed the scope of actionable retaliation committed by the employer under § 704(a), an issue that is separate and distinct from whether § 704(a) permits an employee who did not himself engage in protected activity to bring a retaliation claim and that requires interpretation of entirely different language.[9] Moreover, in concluding that § 704(a) does not confine retaliatory acts to those related to employment or the workplace, the Court noted that "no such limiting words" appear in the statute and thus declined to incorporate restrictions *not expressly set forth* in the plain language of the text.

The statutory language of § 704(a) pertinent to the present case is not silent regarding who falls under the umbrella of its protection. It explicitly identifies those individuals who are protected – employees who "opposed any practice made an unlawful employment practice" or who "made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing" under Title VII. Section 704(a) thus clearly limits the class of claimants to those who actually engaged in the protected activity.

As the Court concluded in *Burlington Northern*, unlike Title VII's substantive provision that bars employment based on an individual's *status* as a member of a protected class, "the anti-retaliation provision seeks to prevent harm to individuals based on *what they do*, *i.e.*, *their conduct*." *Burlington Northern*, 548 U.S. at 63 (emphasis added). In other words, Congress carefully chose qualifying words of *action* ("opposed," "testified," "made a charge," "participated," "assisted"), not words of *association*. Even under the most generous definition of "oppose" recognized by the Court in *Crawford* – "to be hostile or adverse to, as in opinion" – a plaintiff must engage in a discrete, identifiable, and purposive act of opposition to discrimination. *Crawford*, 129 S. Ct. at 850. Thus, such action is a critical component of a prima facie case of retaliation under Title VII. The plain text simply cannot be read to encompass

---

[9]Two other recent Supreme Court decisions, *CBOCS West, Inc. v. Humphries*, 128 S. Ct. 1951 (2008), and *Gomez-Perez v. Potter*, 128 S. Ct. 1931 (2008), upheld retaliation claims brought under entirely different statutes (42 U.S.C. § 1981(a) and 29 U.S.C. § 633a(a), respectively) and rested upon the interpretation of specific statutory language authorizing the suits. These cases do not compel a contrary resolution of the narrow unrelated issue presented in Thompson's appeal.

"piggyback" protection of employees like Thompson who, by his own admission, did not engage in protected activity, but who is merely associated with another employee who did oppose an alleged unlawful employment practice.

## C.

We must look to what Congress actually enacted, not what we believe Congress might have passed were it confronted with the facts at bar. For the reasons we have laid out, it was not "absurd" for Congress to limit the class of persons who are entitled to sue to employees who personally opposed a practice, made a charge, assisted, or participated in an investigation. Our interpretation does not undermine the anti-retaliation provision's purpose because retaliation is still actionable, but only in a suit by a primary actor who engaged in protected activity and not by a passive bystander.[10]

## VI.

For these reasons, we affirm the judgment of the district court and hold that § 704(a) of Title VII does not create a cause of action for third-party retaliation for persons who have not personally engaged in protected activity.

---

[10]All of the parties in this case agreed at oral argument that if Miriam Regalado believed that she was the intended target of retaliation for engaging in her protected activity, she could have filed a retaliation action pursuant to § 704(a) and, under *Burlington Northern*, defendant's termination of Thompson potentially could be deemed an "adverse employment action" against her.

---

**CONCURRING IN THE RESULT**

---

ROGERS, Circuit Judge, concurring.  I concur in the result but my reasoning differs somewhat from that of the majority.

In my view, "discrimination against" an employee may include hurting that employee's relative or friend, and imposing such a hurt would be unlawful if it is imposed "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  At the very least, a contrary reading is neither plain, nor unambiguous.  Indeed, as the majority recognizes, "[a]ll of the parties in this case agreed at oral argument that if Miriam Regalado believed that she was the intended target of retaliation for engaging in her protected activity, she could have filed a retaliation action pursuant to § 704(a) and, under *Burlington Northern* [*& Santa Fe Railway. Co. v. White*, 548 U.S. 53 (2006)], defendant's termination of Thompson potentially could be deemed an 'adverse employment action' against her."  Maj. op. at 17 n.10.  Such a conclusion would *require* that the retaliatory termination of Thompson was "unlawful" under § 2000e-3(a).

In other words, § 2000e-3(a) dictates what practices amount to unlawful retaliation, not who may sue.  And when the person bringing suit is the employee who has sufficiently opposed an unlawful employment practice, § 2000e-3(a) may well render unlawful the firing of the employee's spouse.

The question of who may sue is simply not addressed by § 2000e-3(a).  Rather, the procedural provisions of Title VII provide that "person[s] claiming to be aggrieved" and "person[s] aggrieved" may sue for Title VII violations.  §§ 2000e-5(b), -5(e)(1).  While these terms should be interpreted broadly, they should not be interpreted to extend to every person who has something to gain by challenging the employer's unlawful

action.[1]   If interpreted that broadly, all sorts of persons who are not the intended beneficiaries of Title VII's protections could sue.  For instance, someone interested in the financial health of a company (such as a shareholder or partner) could challenge the firing of a particularly productive employee.  Or a dismissed employee's creditor could challenge the dismissal even when the employee does not want to.  To avoid such results obviously not intended by Congress, "persons aggrieved" must be interpreted to include those persons who are the intended beneficiaries of the protection enacted in the substantive provision.  *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004).

The intended beneficiaries of the anti-retaliation provision of § 2000e-3(a) are obviously the persons retaliated against, not persons who are incidentally hurt by the retaliation.  It follows that in the retaliation context "persons aggrieved" must be interpreted to be the persons retaliated against.  While that might not be the only interpretation of "person aggrieved," it is doubtless the best interpretation.  The person bringing the claim to the EEOC, and subsequently to court, should be the person alleging that the harm was directed at him or her.  That will focus the inquiry where it belongs: on the allegedly unlawful aspect of the employer's retaliatory action, and the extent to which the action is directed against (and harmful to) the protected person.

---

[1]Language in cases like *Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir. 1976), and *EEOC v. Bailey Co.*, 563 F.2d 439 (6th Cir. 1977), that standing under Title VII was intended to be as broad as Article III permits, must be taken in context.

*Senter* involved a challenge to standing to maintain a class action, and we explicitly refrained from reaching a third-party standing issue by noting "that the interests asserted by Appellant in his complaint unquestionably fall within the parameters of Title VII."  532 F.2d at 517 n.6.

*Bailey Co.* dealt with  whether a white woman could challenge her employer's discrimination against blacks.  563 F.2d at 442.  We held that she could, not because a person unprotected by Title VII could sue, but because a white woman was protected by virtue of her interest in an integrated workplace.  *Id.* at 452.  This conclusion was supported by the Supreme Court's *Trafficante* decision, which held that a white tenant had standing to challenge discrimination against blacks by an apartment complex.  *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205 (1972).  Indeed, we stated that were it not for *Trafficante*, we would be inclined to hold that the plaintiff lacked standing.  *Bailey Co.*, 563 F.2d at 452.  As one reason for saying *Trafficante* made a difference, we noted that "the EEOC has interpreted Title VII to confer upon every employee the right to a working environment free from unlawful employment discrimination.  Under the EEOC's interpretation of Title VII, whites are aggrieved by discrimination against blacks at their place of employment and have standing to file charges with the EEOC and sue in court."  *Id.* at 454.  Neither *Bailey Co.* nor *Trafficante* can properly be read to say that any person affected by the imposition of retaliation should be deemed sufficiently aggrieved to bring a Title VII claim.  While Title VII can be interpreted to protect the right of people to associate with people of different races, it can hardly be interpreted to protect the right of people to associate with people who have been retaliated against.

The reasoning and precedent relied upon by the majority in Part IV generally support this conclusion as well. My difference with the majority is founded on a concern that by relying on the language of the provision stating what is unlawful, rather than on the language of the provision regarding who can sue, the holding may be misinterpreted to preclude Title VII claims by protected persons, like Regalado, for retaliation in the form of harm imposed on people that (the employer knows) the protected persons care about.

---

**DISSENT**

---

BOYCE F. MARTIN, JR., Circuit Judge, dissenting. I join Judge Moore's dissent in full but write separately to emphasize how misplaced the majority's relentless reliance on "plain meaning" is: its analysis flows entirely from a flawed and unexamined *ipse dixit*.

In an approach that can hardly be described as exegetical, the majority declares that the meaning of "oppose"—an undefined term in section 704(a), *see* 42 U.S.C. 2000e-3(a)—is "plain and unambiguous," Maj. Op. at 2. Sometimes, of course, the meaning of a statutory term is plain. In those cases, a detailed discussion of the text and underlying Congressional purpose would only cloud the statute's clear dictates. But that is not so here, and the majority fails to recognize that the meaning of "oppose" in section 704(a) is broader than it thinks and, at minimum, ambiguous.

But don't take my word for it. The Supreme Court recently told us so in *Crawford v. Metropolitan Government of Nashville*, __ U.S. __, 129 S. Ct. 846 (2009). There, the Court reversed one of our prior decisions which had held—under the same uncritical "plain meaning" approach used by today's majority—that "oppose" encompasses only the performance of certain activities. In correcting this Court's misguided interpretation, *Crawford* reinforced a broad reading of "oppose" in several key respects. First, it rejected a definition of "oppose" that included only "active, consistent 'opposing' activities"—the Court referred to such a rule as "freakish." *Id.* at 851. Second, in listing dictionary definitions, the Court included one that defined "oppose" as "to be hostile or adverse to, *as in opinion*." *Id.* at 850 (quoting Random House Dictionary of the English Language 1359 (2d ed. 1987)) (emphasis added). Third, and most importantly, the Court stated:

> "Oppose" goes beyond "active, consistent" behavior in ordinary discourse, where we would naturally use the word to speak of someone who has taken no action at all to advance a position beyond disclosing it. Countless people were known to "oppose" slavery before Emancipation,

> or are said to "oppose" capital punishment today, *without* writing public letters, taking to the streets, or resisting the government.

*Crawford*, 129 S. Ct. at 851 (emphasis added). In other words, "oppose," in common everyday usage ("plain meaning"?), includes the silent opposition of everything from gay marriage to the death penalty, without requiring anyone to shout it from the rooftops. *Crawford* thus drastically undercut the majority's tunnel vision view that this case concerns only a straightforward debate about whether clear statutory text controls over some unexpressed Congressional purpose. *See* Maj. Op. at 10. Were it so simple.

Aside from ruling that Thompson is not personally covered by the statute (more on that later), the majority claims that Thompson "forfeited" the issue. Maj. Op. at 13 n.7. Yet it misunderstands forfeiture's significance. A plaintiff cannot forfeit a statute's inherent ambiguity; the meaning of "oppose" is not "plain" and Thompson cannot make it so via forfeiture. And make no mistake, the majority does not say that Thompson has forfeited his right to make this argument and therefore the issue remains open to be decided in some future case (as would be proper). Instead it invokes forfeiture but nevertheless *decides the question*. *See* Maj. Op. at 13 ("[E]ven in the wake of *Crawford*, Thompson has failed to raise a genuine issue of material fact that he engaged in protected activity[.]"). If the majority wants to decide this question (it clearly does), it may not hide behind a purported forfeiture to deflect contrary arguments while doing so. The majority accuses the dissents of "advocat[ing] an issue that has not been plead, argued, or presented." Maj. Op. at 13 n.7. Maybe so, but that's only because the majority decides one.[1]

Furthermore, in concluding that "oppose" does not encompass Thompson's conduct, the majority purports to agree with Justice Alito's concurring opinion in *Crawford*. Maj. Op. at 12-13. Yet the majority's reasoning, already at odds with the *Crawford* majority's reasoning, is also inconsistent with Justice Alito's. Specifically, Justice Alito, joined by Justice Thomas, expressed doubt about whether "oppose" should

---

[1]On the other hand, if the majority's forfeiture point is to be believed, then future courts and litigants should treat the majority's discussion of the scope of "oppose" and the impact of *Crawford* as mere dicta and the issue open going forward.

be interpreted to cover what he called "silent opposition." *Crawford*, 129 S. Ct. at 854 (Alito, J., concurring). But he did so not because he thought "oppose" explicitly barred that result—as the majority asserts today—but instead because of that interpretation's potentially "important *practical* implications." *Id.* at 854 (Alito, J., concurring) (emphasis added) (citing the possibility of litigation "by employees who never expressed a word of opposition to their employers," though observing that "in many cases, such employees would not be able to show that management was aware of their opposition and thus would not be able to show that their opposition caused the adverse actions at issue").

Indeed, at no point in Justice Alito's concurrence did he invoke that interpretive bogeyman, "plain meaning"; in fact he conceded that the meaning of "oppose" is not plain: "The question whether the opposition clause shields employees who do not communicate their views to their employers through purposive conduct is not before us in this case; *the answer to that question is far from clear*; and I do not understand the Court's holding to reach that issue here." *Id.* at 854-55 (Alito, J., concurring) (emphasis added). The majority pretends that this statement somehow supports its view that the statute is "plain and unambiguous." Maj. Op. at 13. In any event, regardless of how it has been presented so far, our Court cannot decide this question by invoking "plain meaning" unless "oppose" actually is "plain."

So, because the meaning of "oppose" is ambiguous, determining whether plaintiffs like Thompson should be allowed to sue ought to depend on how much weight Congress would have given the "important practical implications" Justice Alito and Judge Moore identify, which the majority ignores. Based on the text, structure, history, and Congressional purpose, I would hold these claims cognizable: I cannot conceive that Congress wanted to categorically bar them through the ambiguous, undefined term "oppose." This is not a case about abstract third-party claims; it is about an employee who was fired because, he says, the company retaliated against him for his opposition to an unlawful employment practice.

That said, this does not mean Thompson automatically wins. We do not know whether he could meet his evidentiary burden, though I am certain he should be given the opportunity to try to prove that his employer knew of his unexpressed opposition and fired him for that reason. Today, however, the majority sidesteps the traditional framework—which includes causation and discriminatory intent requirements—for deciding discrimination claims, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Crawford v. TRW Auto. U.S.*, 560 F.3d 607, 612 (6th Cir. 2009), and replaces it with a complete, indiscriminate bar on valid and invalid claims alike on the basis of textual analysis that fails to analyze the text.

I respectfully dissent.

———————————

## DISSENT

———————————

KAREN NELSON MOORE, Circuit Judge, dissenting. I am baffled by the majority opinion's downplaying of important Supreme Court precedent in this arena. Both long-standing Supreme Court decisions and more recent pronouncements by the Court support a reading of § 704(a) of Title VII, 42 U.S.C. 2000e-3(a),[1] that encompasses Thompson's claim. Older Supreme Court cases, such as *Bob Jones University v. United States*, 461 U.S. 574 (1983), highlight the primacy of statutory purpose, while more recent decisions, such as *Crawford v. Metropolitan Government of Nashville*, --- U.S. ---, 129 S. Ct. 846 (2009), demonstrate the Court's belief that a broad approach should apply in interpreting statutes meant to protect employees against employer retaliation for protected activity. These cases reinforce the correctness of the panel majority's approach in this case. Moreover, even under the approach advocated by the concurrence, Thompson may sue under § 704(a). Therefore, and for the reasons stated below, I respectfully dissent.

## I. *Bob Jones University v. United States* and other Long-Standing Supreme Court Precedent

The majority contends that "the text of § 704(a) is plain in its protection of a limited class of persons who are afforded the right to sue for retaliation," and that we are precluded from considering whether application of the plain language of the statute "would create an 'absurd' result." Majority Op. at 4-5. As the vacated panel majority opinion properly held, this assertion is incorrect.

"The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader

———————————

[1] Section 704(a) states in pertinent part that:
   It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . .
42 U.S.C. 2000e-3(a).

context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). Furthermore, whether a statute is plain and unambiguous must be determined "with regard to the particular dispute in the case." *Id*. at 340. Moreover, "[i]t is a well-established canon of statutory construction that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute." *Bob Jones*, 461 U.S. at 586.

The Supreme Court has noted that the "'primary purpose'" of § 704(a) is "'[m]aintaining unfettered access to statutory remedial mechanisms.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) (quoting *Robinson*, 519 U.S. at 346). Clearly, the majority's narrow interpretation of § 704(a) squarely contradicts this purpose. *Cf. Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 569 (3d Cir. 2002) ("Allowing employers to retaliate via friends and family, therefore, would appear to be in significant tension with the overall purpose of the anti-retaliation provisions, which are intended to promote the reporting, investigation, and correction of discriminatory conduct in the workplace."). However, rather than analyzing this issue directly, the majority implies that these cases are "'rare, so that not allowing claims to proceed in these few instances would not necessarily defeat the plain purpose of the anti-discrimination laws.'" Majority Op. at 12 (second set of internal quotation marks omitted) (quoting *Fogleman*, 283 F.3d at 569). Neither the majority nor *Fogleman* cites any authority for this sweeping assertion, thus demanding that the reader accept this claim based on nothing more than blind faith. I am not prepared to make such a leap.[2]

Because the majority's plain-language interpretation of the statute defeats the Congressional purpose, it is proper to consider sources beyond the text to determine the correct interpretation of § 704(a). *Bob Jones*, 461 U.S. at 586. This is the reality that the vacated panel majority opinion recognized, and I fully agree with both the conclusion reached in that opinion and the approach utilized therein. Clearly, the purpose behind the statute provides the best guide as to how the statute should be interpreted. Thus, I

---

[2]In fact, not even the *Fogleman* panel found this rationale persuasive. *Fogleman*, 283 F.3d at 569 (noting that it did not find this asserted reason to restrict § 704(a) "particularly convincing").

believe that § 704(a) should be interpreted broadly to allow for "'unfettered access to statutory remedial mechanisms.'" *Burlington*, 548 U.S. at 64 (quoting *Robinson*, 519 U.S. at 346).[3] Such a broad interpretation demands that third parties such as Thompson be given the opportunity to bring a § 704(a) retaliation claim for the harm visited upon them in retaliation for protected actions undertaken by close associates.[4] If Thompson cannot bring this action, then he has no recourse for the harm that North American Stainless has caused him by retaliating through Thompson against Thompson's then fiancee/now wife Miriam Regalado for Regalado's protected activity of filing a Title VII discrimination claim.[5] Under the majority's view, employers can use Thompson, and

---

[3] I am not the first in our circuit to take such an approach to interpreting antiretaliation provisions. In *EEOC v. Ohio Edison Co.*, 7 F.3d 541 (6th Cir. 1993), a panel of this court noted that

> courts have routinely adopted interpretations of retaliation provisions in employment statutes that might be viewed as outside the literal terms of the statute in order to effectuate Congress's clear purpose in proscribing retaliatory activity. Contrary to defendant's assertions, courts have frequently applied the retaliation provisions of employment statutes to matters not expressly covered by the literal terms of these statutes where the policy behind the statute supports a non-exclusive reading of the statutory language.

*Id*. at 545.

[4] Further support for this position is found in the EEOC Compliance Manual, which states that "'Title VII . . . prohibit[s] retaliation against someone so closely related to or associated with the person exercising his or her statutory rights that it would discourage that person from pursuing those rights.'" 2 EEOC Compliance Manual § 8.II(B)(3)(c), 614:0005 (BNA 2003); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000). The Supreme Court has relied on the EEOC Manual in several decisions interpreting § 704(a). *See Burlington*, 548 U.S. at 65-66; *Robinson*, 519 U.S. at 345-46; *see also Crawford*, 129 S. Ct. at 851 (referencing the EEOC Compliance Manual). Although not controlling, this manual "do[es] constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986) (internal quotation marks omitted); *see also Crawford*, 129 S. Ct. at 851 (same).

The Compliance Manual further notes that "[r]etaliation against a close relative of an individual who opposed discrimination can be challenged by both the individual who engaged in protected activity and the relative, where both are employees." 2 EEOC Compliance Manual § 8.II(B)(3)(c). This statement suggests that the EEOC may view North American Stainless's action of firing Thompson as retaliation against Thompson for Regalado's filing of a discrimination charge. Thus, the Compliance Manual provides yet another light in which to view Thompson's claim that renders the claim meritorious. *See also* 2 EEOC Compliance Manual § 8.II(C)(3) ("The retaliation provision[] of Title VII . . . prohibit[s] retaliation against someone so closely related to or associated with the person exercising his or her statutory rights that it would discourage or prevent the person from pursuing those rights. For example, it would be unlawful for a respondent to retaliate against an employee because his or her spouse, who is also an employee, filed an EEOC charge. Both spouses, in such circumstances, could bring retaliation claims." (footnote omitted citing *Ohio Edison Co.*, 7 F.3d at 544)).

[5] The majority attempts to alleviate this concern by noting that "if Miriam Regalado believed that she was the intended target of retaliation for engaging in her protected activity, she could have filed a retaliation action pursuant to § 704(a)." Majority Op. at 17 & n.10. However, Regalado's ability to sue in this matter does not solve the instant problem because the relief Regalado would be able to seek would appear to differ substantially from the relief that Thompson can seek. Specifically, it is unclear whether Regalado would be able to sue to have Thompson reinstated. Thus, Regalado's suit might not completely remedy Thompson's harm. Therefore, contrary to the majority's assertion, the fact that Regalado can sue does not prevent the majority's interpretation from undermining the purpose behind the antiretaliation

others like him, as swords to keep employees from invoking their statutory rights with no redress for the harms suffered by those individuals. *Cf. Fogleman*, 283 F.3d at 569 ("To retaliate against a man by hurting a member of his family is an ancient method of revenge, and is not unknown in the field of labor relations." (internal quotation marks omitted)). Clearly, this was not Congress's intent in passing Title VII, *see Burlington*, 548 U.S. at 64, and I cannot support such a construction of § 704(a).[6]

## II. *Crawford v. Metropolitan Government of Nashville* and Recent Supreme Court Decisions

The Supreme Court has recently emphasized the need to interpret protective statutes, including § 704(a), in a broad manner in order to ensure that the purposes behind these statutes are satisfied. The most recent of these pronouncements came in *Crawford v. Metropolitan Government of Nashville*, a case that originated from our circuit and that involves an employee who was fired after she participated in an internal investigation into harassment. *Crawford* concerns the scope of the "opposition clause" of § 704(a). *Crawford*, 129 S. Ct. at 850 ("The opposition clause makes it 'unlawful . . . for an employer to discriminate against any . . . employe[e] . . . because he has opposed any practice made . . . unlawful . . . by this subchapter.' § 2000e-3(a)."). A panel of this circuit had held that the opposition clause "'demands active, consistent "opposing" activities to warrant . . . protection against retaliation.'" *Crawford v. Metro. Gov't of Nashville*, 211 F. App'x 373, 376 (6th Cir. 2006) (unpublished opinion) (omission in original) (quoting *Bell v. Safety Grooving & Grinding, LP*, 107 F. App'x 607, 610 (6th Cir. 2004) (unpublished opinion)). The Supreme Court rejected this narrow definition

provision.

---

[6]Contrary to the majority's assertion that "no circuit court of appeals has held that Title VII creates a claim for third-party retaliation," Majority Op. at 10, two other circuits have recognized the need to interpret § 704(a) broadly to include third-party retaliation claims, *see Wu v. Thomas*, 863 F.2d 1543, 1547-48 (11th Cir. 1989) (allowing a husband's claim—that the university employing a couple engaged in retaliatory conduct towards the husband in retaliation for his wife's filing of an EEOC sex-discrimination charge—to proceed as a "wrongful retaliatory conduct" claim); *McDonnell v. Cisneros*, 84 F.3d 256, 262 (7th Cir. 1996) (citing *Wu* with approval and noting the need to read § 704(a) broadly to ensure that its purpose is satisfied) (Posner, C.J.). Moreover, we have previously noted, albeit in dicta, that "a plaintiff's allegation of reprisal for a relative's antidiscrimination activities states a claim upon which relief can be granted under Title VII." *Ohio Edison Co.*, 7 F.3d at 544 (adopting the view espoused in *DeMedina v. Reinhardt*, 444 F. Supp. 573 (D.D.C. 1978), *aff'd in part and remanded in part*, 686 F.2d 997 (D.C. Cir. 1982)).

of "oppose," calling such an interpretation "freakish," and embraced a more expansive "ordinary meaning" of "oppose." *Crawford*, 129 S. Ct. at 850-51. Such an approach shows the Supreme Court's diligence in guaranteeing that § 704(a)'s purpose is fulfilled.

Besides demonstrating the Court's commitment to interpreting § 704(a) consistent with its purpose, *Crawford* opens the door to § 704(a) claims that are based on a broad definition of "oppose." *Crawford* states that the "ordinary meaning" of "oppose" includes the following Random House Dictionary definition: "'to be hostile or adverse to, *as in opinion*.'" *Crawford*, 129 S. Ct. at 850 (emphasis added). The Supreme Court explained that

> "[o]ppose" goes beyond "active, consistent" behavior in ordinary discourse, where we would naturally use the word to speak of someone who has taken no action at all to advance a position beyond disclosing it. Countless people were known to "oppose" slavery before Emancipation, or are said to "oppose" capital punishment today, *without* writing public letters, taking to the streets, or resisting the government.

*Id*. at 851 (emphasis added).

The vacated panel majority opinion in *Thompson* did not focus on the definition of "oppose," because the Supreme Court had not yet issued its opinion in *Crawford*. However, now that *Crawford* has expanded the landscape of the opposition clause, it is appropriate to consider whether Thompson has met his burden on summary judgment by raising a genuine issue of material fact as to whether he participated in the type of opposition protected by *Crawford*. I believe that Thompson has met this burden.

According to his complaint, Thompson maintained a relationship with Miriam Regalado (engagement and then marriage) during the time in which she claims that she was being discriminated against by North American Stainless. Joint Appendix ("J.A.") at 14 (Compl. ¶ 13). Moreover, Thompson aided Regalado in preparing and filing her discrimination complaint and participated in an interview with the EEOC regarding the

matter. J.A. at 29-30, 35-36 (Thompson Dep. at 56-57, 80, 85).**7** When "view[ing] the factual evidence and draw[ing] all reasonable inferences in favor of the non-moving party," as we must on summary judgment, it is reasonable to infer that Thompson opposed the discrimination against Regalado. *Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). Such an inference not only is reasonable, but also is likely the most accurate description of Thompson's involvement. Moreover, it is reasonable to infer that, given North American Stainless's knowledge regarding Regalado and Thompson's intimate relationship, North American Stainless believed that Thompson opposed the discrimination against Regalado and fired Thompson for that opposition. Reading the facts in this light, I conclude that the district court erred in granting summary judgment against Thompson.

The majority insists that *Crawford* "do[es] not require that [it] alter [its] analysis or change [its] conclusion" in this case, Majority Op. at 11, because "Thompson does not allege in his complaint that he *personally* engaged in *any* statutorily protected activity or 'opposition' to discrimination," Majority Op. at 13. While it may be true that Thompson's complaint focuses on North American Stainless's retaliation against Regalado through Thompson, such an approach is not surprising given the state of the law in this circuit during Thompson's district court proceedings. *Crawford* changed that law while Thompson's direct appeal was pending. Thompson should not be punished now because he relied on our prior erroneous and crabbed position. At the very least, Thompson should be given an opportunity to make a *Crawford* "opposition" argument before the district court, giving the district court an opportunity to consider fully the effect of *Crawford* on the actual facts involved in this case. Rather than allow for more consideration of this issue, the majority slams the door on Thompson's claim while paying mere lip service to *Crawford*'s expansive holding. In my view, this is an unacceptable manner in which to treat pertinent Supreme Court precedent that is binding on direct appeal in Thompson's case. Moreover, the Supreme Court's willingness to

---

**7**It does not appear that Thompson himself informed any of his supervisors that he aided Regalado with filing her complaint; however, other coworkers were aware of his assistance. J.A. at 29, 35-37 (Thompson Dep. at 56, 80, 85, 118).

embrace such an encompassing meaning of "oppose" illustrates the Court's commitment to ensuring that § 704(a)'s reach is broad enough to effectuate the purpose of Title VII.

*Crawford* is not the first indication the Court has given that protective statutes such as Title VII should not be read narrowly. Notably, the Supreme Court has recently interpreted several protective statutes broadly to include retaliation claims in order to achieve the purposes of those statutes, even though the texts of those statutes say nothing about retaliation. *See Gomez-Perez v. Potter*, --- U.S. ---, 128 S. Ct. 1931, 1936 (2008) (holding that the phrase "discrimination based on age" in the Age Discrimination in Employment Act, 29 U.S.C. § 633a(a), includes retaliation claims, even though the statute makes no mention of retaliation); *CBOCS West, Inc. v. Humphries*, --- U.S. ---, 128 S. Ct. 1951, 1954-55 (2008) (holding that 42 U.S.C. § 1981 encompasses retaliation claims, even though the statute does not explicitly mention retaliation). Even though these cases do not address § 704(a), they still demonstrate the Supreme Court's dedication to satisfying the purpose of protective statutes, rather than rigid adherence to the text when doing so would not fulfill the clear legislative purpose. Additionally, in both *Crawford* and *Burlington*, the Supreme Court broadly construed language in § 704(a) to increase the number of persons who can bring claims under the statute. Although each of these cases involved slightly different issues than the instant appeal, these decisions further evidence the Supreme Court's determination that § 704(a) should be interpreted in favor of inclusivity rather than exclusivity. The majority simply brushes these guiding signals aside. I do not believe that these Supreme Court decisions can be so cavalierly dismissed. Given the majority's clear disregard for the purpose of § 704(a) and the guiding principles that the Supreme Court has provided in this area, I must dissent.

### III.  42 U.S.C. § 2000e-5 STANDING

The concurrence asserts that § 704(a) "dictates what practices amount to unlawful retaliation, not who may sue." Concurrence at 18. It contends that the proper inquiry in this case is whether Thompson has standing to sue under 42 U.S.C. § 2000e-5.

As even the majority recognizes, the concurrence's conclusion that Thompson lacks standing is flawed.

At the outset, the concurrence correctly concedes that North American Stainless committed an unlawful employment act, as defined by the antiretaliation clause, when it fired Thompson.[8] However, the concurrence then suggests that Thompson lacks standing to bring this claim under 42 U.S.C. § 2000e-5 because Thompson has not been "sufficiently aggrieved." Concurrence at 19 n.1. This latter assertion confuses the harm at issue in the instant case and is in error. Although North American Stainless may have retaliated against Regalado, North American Stainless harmed Thompson in order to effectuate this retaliation. Thompson is thus not asserting Regalado's harm, but rather is seeking redress for the harm done directly to him by North American Stainless.

"Aggrieved" is not defined by Title VII and thus should be given its ordinary meaning. *See Crawford*, 129 S. Ct. at 850 (citing *Perrin v. United States*, 444 U.S. 37, 42 (1979)). According to the Oxford English Dictionary, to be "aggrieved" is to be "[i]njured or wronged in one's rights, relations, or position." Oxford English Dictionary Online, www.dictionary.oed.com (last visited April 20, 2009) (defining "aggrieved"). Applying this definition and assuming, as the concurrence does, that firing Thompson was an unlawful act, it is obvious that Thompson is "a person claiming to be aggrieved . . . alleging that an employer . . . has engaged in an unlawful employment practice." 42 U.S.C. 2000e-5(b).

Furthermore, there is no authority to support the concurrence's attempt to narrow the scope of § 2000e-5 to encompass only "those persons who are the intended beneficiaries of the protection enacted in the substantive provision" of Title VII, Concurrence at 19, particularly because the case cited in support of that proposition, *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004), pertains to the issue of third-party standing, which is not the basis of Thompson's claim. However, even if the

---

[8]As the concurrence correctly notes, such a concession is implicit in the majority's assertion that Regalado could bring a retaliation claim against North American Stainless based on Thompson's firing. Concurrence at 18; *see also* Majority Op. at 17 & n.10.

concurrence's restrictive reading of § 2000e-5 were correct, it does not follow that Thompson would not have standing to bring his claim. As explained above, Congress intended for individuals to have "unfettered access to statutory remedial mechanisms," *Burlington*, 548 U.S. at 64, and to honor such intent, Thompson must be counted among the class of individuals protected by the antiretaliation clause. Therefore, it is not at all "obvious[] [that] the persons retaliated against, not [the] persons who are incidentally hurt by the retaliation" are the only intended beneficiaries of the antiretaliation clause. Concurrence at 19. To the contrary, for the reasons discussed above, the intended beneficiaries of the antiretaliation clause include employees, such as Thompson, who are fired allegedly because of their intimate relationships with other employees who have filed EEOC charges of discrimination.

Moreover, we previously have held that Title VII standing is as broad as Article III standing. *See EEOC v. Bailey Co.*, 563 F.2d 439, 452 (6th Cir. 1977); *see also Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 295 (7th Cir. 2000) (holding that the language of § 2000e-5 "signals a congressional intent to extend standing to the outermost limits of Article III"). No one has asserted that Thompson lacks Article III standing, nor could they given the fact that Thompson has an injury-in-fact caused by North American Stainless that can be redressed if Thompson is victorious in this action. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Thus, even approaching this case in the way that the concurrence suggests, I would still conclude that Thompson can sue under Title VII.

## IV. CONCLUSION

For the reasons expressed in this opinion, in the panel's opinion, and in Judge Martin's dissenting opinion, which I join fully, I would permit Thompson's retaliation action to proceed.

———————————

## DISSENT

———————————

WHITE, Circuit Judge, dissenting. All members of the en banc panel appear to agree that the firing of an employee's co-worker-spouse (or co-worker-fiancée) in retaliation for the employee's opposition to an unlawful employment practice is unlawful under § 704(a), 42 U.S.C. § 2000e-3(a). The majority does not agree, however, that the fired spouse has a right to sue under Title VII. Like the other dissenting judges, I disagree. I write separately to make clear that I do not rely on Title VII's broad remedial purpose to reach this conclusion. Although recognizing Thompson's right to maintain an action is consistent with Title VII's remedial purpose, I would not find such a right were it contrary to the plain meaning of the statute. In short, while I join in Judge Moore's and Judge Martin's dissenting opinions, I come to that point after rejecting the majority's conclusion that § 704(a), which makes it unlawful to discriminate against an employee because he has opposed an unlawful employment practice, unambiguously provides that only the person who opposed the violation can maintain the action.[1]

## I

The majority states that in its view,

> the text of § 704(a) is plain in its protection of a limited class of persons who are afforded the right to sue for retaliation. To be included in this class, plaintiff must show that his employer discriminated against him "because *he has opposed* any practice made an unlawful employment practice by this subchapter, or because *he has made a charge, testified, assisted, or participated* in any manner in an investigation, proceeding or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

* * *

---

[1]Two issues of statutory interpretation are implicated here. The first is whether Thompson can maintain an action on the basis that Defendant North American Stainless fired him as a means of retaliating against Regalado for her opposition; the second is whether, under the recently decided case of *Crawford v. Metropolitan Government of Nashville*, – U.S. – ; 129 S. Ct. 846 (2009), Thompson can maintain an action on the basis that he was fired because he supported Regalado's opposition. I first address the former issue.

>       By application of the plain language of the statute, Thompson is
> not included in the class of persons for whom Congress created a
> retaliation cause of action because he personally did not oppose an
> unlawful employment practice, make a charge, testify, assist, or
> participate in an investigation.

Majority Op. at 4-5 (emphasis in original). The majority correctly observes that "*Burlington Northern* [*& Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006),] addressed the scope of actionable retaliation committed by the employer under § 704(a), an issue that is separate and distinct from whether § 704(a) permits an employee who did not himself engage in protected activity to bring a retaliation claim . . . ." Majority Op. at 16. The majority then contrasts § 704(a)'s lack of limiting language regarding retaliatory discrimination (at issue in *Burlington Northern*) with the language of § 704(a) it finds pertinent to this case:

>       The statutory language of § 704(a) pertinent to the present case
> is not silent regarding who falls under the umbrella of its protection. It
> explicitly identifies those individuals who are protected – employees who
> "opposed any practice made an unlawful employment practice" or who
> "made a charge, testified, assisted or participated in any manner in an
> investigation, proceeding, or hearing" under Title VII. Section 704(a)
> thus clearly limits the class of claimants to those who actually engaged
> in the protected activity.

*Id.*

Thus, the majority looks to the plain language of § 704(a) and finds in it the answer to the question whether § 704(a) permits an employee who did not himself engage in protected activity to bring a retaliation claim. But, the plain language of § 704(a) is addressed to declaring that particular conduct by an employer constitutes an unlawful employment practice. Contrary to the majority's characterization, the statutory language does not tell us "*who* falls under the umbrella of its protection," Majority Op. at 16, but rather, *what* conduct is prohibited. The plain language of § 704(a) simply declares that it is unlawful to discriminate against an employee because that employee opposed an unlawful employment practice. The focus is on the prohibited retaliatory conduct. This, I believe, is the point made by the concurrence. It is true that by prohibiting the retaliatory conduct, Congress protected the employee, but the fact

remains that § 704(a) speaks in terms of unlawful *conduct*, albeit as a means of protecting employees.

Because the language of § 704(a) addresses *what* is forbidden, rather than *who* is protected, the majority must make an inference to reach its conclusion that § 704(a) tells us who is and is not protected against the actions it prohibits, and then, more importantly, deduce from that inference  who may and may not maintain a cause of action.  Conceding, arguendo, that the majority's inference is reasonable, it is not the only reasonable inference to be made.  This, in my view, undermines the majority's reliance on the plain language of § 704(a) as a barrier to recognizing Thompson's right to maintain an action.

Section 704(a) tells us that it is an unlawful employment practice for an employer to discriminate against an opposing employee by firing that employee's co-employee-fiancée in retaliation for the opposing employee's opposition to an unlawful practice.  To be sure, the unlawful employment practice prohibited by § 704(a) is discrimination against an employee who has opposed an unlawful practice, or supported another's opposition.  *See Burlington Northern*, 548 U.S. at 56.  It does not follow, however, that an employer cannot commit an unlawful employment practice under § 704(a) by discriminating against the opposing employee through the vehicle of firing that employee's co-employee spouse.  As the separate opinions have noted, it appears that all of us recognize that this would be unlawful conduct under *Burlington Northern*.

The majority goes beyond the language of § 704(a), concluding that even if Thompson can prove such a case, he cannot maintain the action because he is not the person who opposed the unlawful practice.  The majority bases this conclusion on the plain meaning it ascribes to § 704(a), notwithstanding that § 704(a) does not purport to address the question who can bring a charge or maintain an action based on a violation.  Essentially, the majority concludes that Thompson does not have a right not to be harmed in his employment by this particular unlawful employment practice because although the unlawful practice harmed him, and although the harm was the intended

consequence of the unlawful practice (albeit an intermediate harm in path to the ultimate goal of harming Regalado), only the opposing employee is protected by § 704(a).

In contrast, the statutory provisions can reasonably be understood to mean that certain retaliatory conduct by an employer (such as that allegedly involved here) is unlawful; that when an employer engages in such conduct, it violates § 704(a); and once the employer's conduct is found to violate § 704(a), there is no reason to look back to that section to determine who may maintain an action based on the violation. As noted by the concurrence, the provisions addressing the filing of charges and civil actions are found in a different section, 42 U.S.C. § 2000e-5(b), which refers to persons "aggrieved." Thus, to answer the question whether Thompson can sue based on the § 704(a) violation, we need ask whether Thompson is aggrieved by the unlawful employment practice.

Accepting the allegations as pled, Thompson, himself, is unquestionably a person claiming to be aggrieved by an unlawful employment practice – the retaliation against Regalado. As Judge Moore ably discusses, there is no support for the conclusion that Thompson is not sufficiently aggrieved.

The concurrence rejects the plain meaning of "aggrieved" – to be "injured or wronged in one's rights"[2] – which would clearly include Thompson, in favor of a policy-based meaning that restricts the word's scope to "those persons who are the intended beneficiaries of the protection enacted in the substantive provision," Concurring Op. at 19, thus linking the definition of "aggrieved" to the substantive violation. Through this linkage, the concurrence reaches the same ultimate conclusion as the majority – that the person aggrieved must be the person who opposed the unlawful practice. The concurrence fears that persons who are not the intended beneficiaries of Title VII might sue. But this broader concern need not be satisfied by artificially restricting the plain meaning of "aggrieved" and declaring that only the person who opposed the unlawful practice can be aggrieved within the meaning of the statute. Title VII deals with

---

[2] Oxford English Dictionary Online, http://www.dictionary.oed.com (defining "aggrieved").

discrimination in employment. The concurrence's hypothetical creditor-plaintiff and shareholder-plaintiff can clearly be eliminated as not being within the scope of Title VII's protections. Moreover, Title VII is already limited in scope – a co-employee plaintiff such as Thompson must prove that he was discriminated against in his employment either because he opposed his employer's unlawful employment practice with respect to his co-employee/fiancée or because his employer sought to retaliate against his co-employee/fiancée by firing him. If the co-employee plaintiff proceeds according to the latter theory – the one at issue here – he must establish that the employer's motivation for the employment action by which he was aggrieved was to retaliate against the person who opposed the unlawful practice. Where the relationship between the two employees is more attenuated, it will be more difficult to prove this unlawful motivation.

To be sure, lines must be drawn. And despite our differences, all members of the panel agree that Congress should draw those lines, not the courts. The majority concludes that Congress drew the line at issue here in § 704(a) by describing the unlawful practice in terms that refer to the opposing employee. I conclude that Congress described the unlawful practice in terms that refer to the opposing employee because it is discrimination against the opposing employee that is unlawful, and that Congress intended to protect employees who are aggrieved by unlawful employment practices. To be sure, every employee is not aggrieved when one employee is retaliated against. But sometimes the employer may retaliate in such a way that other employees will be directly and intentionally harmed. It is more consistent with the statutory language and purpose to draw the line by determining if there has been an unlawful employment practice and then asking if the plaintiff is aggrieved within Congress's use of the term, than it is to draw the line by, in effect, turning an otherwise unlawful practice into an acceptable one by declaring that the person aggrieved by the practice is not within the protection of the provision that makes the undeniably unlawful conduct unlawful. The former approach, which views conduct as either unlawful under § 704(a) or not, and proceeds from that point forward asking if a claimant is aggrieved, thus respecting the plain language of both statutory provisions at issue here, is preferable to the approach

that restricts the plain language of these provisions in anticipation of cases yet to come. At the very least, the statutory provisions can be reasonably construed in this fashion. It does no violence to the plain meaning of § 704(a), and is consistent with it, to hold that Thompson can establish an unlawful employment practice under § 704(a) if he proves that he was fired as an act of retaliation against Regalado. Having reached this point, I concur in Judge Moore's opinion.

## II

The preceding discussion has been addressed to the issue whether Thompson can maintain an action based on his being fired as an act of retaliation against Regalado, as this is the posture in which the case has been litigated thus far. I agree with the majority that this claim is not directly affected by the *Crawford* decision because it does not rest on Thompson's opposition. Nevertheless, I agree with Judge Moore and Judge Martin that we should not ignore *Crawford*'s effect on Thompson's rights under § 704(a); that post-*Crawford*, the record is sufficient to create a genuine issue whether Thompson himself "opposed" an unlawful employment practice; that he should be permitted to amend his complaint to allege such opposition should he choose to do so; and that if the case raises no issues concerning his opposition under *Crawford,* the majority has no reason to reach the issue.

## III

In sum, the question before us is whether Thompson's action, which is consistent with the intent of the statute, is in fact authorized. The majority concludes that it is precluded by the language of § 704(a), but § 704(a) does not present the plain-meaning problem identified by the majority. The relevant questions are whether defendant violated § 704(a) and whether Thompson is a person aggrieved by that violation. Thompson has made a sufficient showing to survive summary judgment as to both. While an overly broad construction of "aggrieved" might be problematic if taken to the extreme, one need not go down that path here because Thompson lost his job and it is difficult to conceive of a potential plaintiff being more aggrieved. Because we are

reviewing the grant of a motion for summary judgment and the intervening case of *Crawford* has significantly changed how Thompson might be able to proceed, he should be permitted to amend should he choose to do so.