*273 Justice Souter
delivered the opinion of the Court.
Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U. S. C. § 2000e et seq. (2000 ed. and Supp. V), forbids retaliation by employers against employees who report workplace race or gender discrimination. The question here is whether this protection extends to an employee who speaks out about discrimination not on her own initiative, but in answering questions during an employer’s internal investigation. We hold that it does.
I
In 2002, respondent Metropolitan Government of Nashville and Davidson County, Tennessee (Metro), began looking into rumors of sexual harassment by the Metro School District’s *274 employee relations director, Gene Hughes.[1] 211 Fed. Appx. 373, 374 (CA6 2006). When Veronica Frazier, a Metro human resources officer, asked petitioner Vicky Crawford, a 30-year Metro employee, whether she had witnessed “inappropriate behavior” on the part of Hughes, id., at 374-375, Crawford described several instances of sexually harassing behavior: once, Hughes had answered her greeting, “‘Hey Dr. Hughes, [wjhat’s up?/ ” by grabbing his crotch and saying “ ‘[Y]ou know what’s up’ he had repeatedly “ ‘put his crotch up to [her] window’ and on one occasion he had entered her office and “ ‘grabbed her head and pulled it to his crotch/ ” id., at 375, and n. 1. Two other employees also reported being sexually harassed by Hughes. Id., at 375. Although Metro took no action against Hughes, it did fire Crawford and the two other accusers soon after finishing the investigation, saying in Crawford’s case that it was for embezzlement. Ibid. Crawford claimed Metro was retaliating for her report of Hughes’s behavior and filed a charge of a Title VII violation with the Equal Employment Opportunity Commission (EEOC), followed by this suit in the United States District Court for the Middle District of Tennessee. Ibid.
The Title VII antiretaliation provision has two clauses, making it “an unlawful employment practice for an employer to discriminate against any of his employees ... [1] because he has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.” 42 U. S. C. § 2000e-3(a). The one is known as the “opposition clause,” the other as the “participation clause,” and Crawford accused Metro of violating both.
*275 The District Court granted summary judgment for Metro. It held that Crawford could not satisfy the opposition clause because she had not “instigated or initiated any complaint,” but had “merely answered questions by investigators in an already-pending internal investigation, initiated by someone else.” Memorandum Opinion, No. 3:03-cv-0996 (MD Tenn., Jan. 6,2005), App. C to Pet. for Cert. 16a-17a. It concluded that her claim also failed under the participation clause, which Sixth Circuit precedent confined to protecting “'an employee’s participation in an employer’s internal investigation . . . where that investigation occurs pursuant to a pending EEOC charge’ ” (not the case here). Id., at 15a (emphasis deleted) (quoting Abbott v. Crown Motor Co., 348 F. 3d 537, 543 (CA6 2003)).
The Court of Appeals affirmed on the same grounds, holding that the opposition clause “'demands active, consistent “opposing” activities to warrant... protection against retaliation,’” 211 Fed. Appx., at 376 (quoting Bell v. Safety Grooving & Grinding, LP, 107 Fed. Appx. 607, 610 (CA6 2004)), whereas Crawford did “not claim to have instigated or initiated any complaint prior to her participation in the investigation, nor did she take any further action following the investigation and prior to her firing,” 211 Fed. Appx., at 376. Again like the trial judge, the Court of Appeals understood that Crawford could show no violation of the participation clause because her “ ‘employer’s internal investigation’ ” was not conducted “‘pursuant to a pending EEOC charge.’” Ibid, (quoting Abbott, supra, at 543).
Because the Sixth Circuit’s decision conflicts with those of other Circuits, particularly as to the opposition clause, see, e. g., McDonnell v. Cisneros, 84 F. 3d 256, 262 (CA7 1996), we granted Crawford’s petition for certiorari. 552 U. S. 1162 (2008). We now reverse and remand for further proceedings.
*276 II
The opposition clause makes it “unlawful ... for an employer to discriminate against any... employe[e]... because he has opposed any practice made . . . unlawful ... by this subchapter.” §2000e-3(a). The term “oppose,” being left undefined by the statute, carries its ordinary meaning, Perrin v. United States, 444 U. S. 37, 42 (1979): “[t]o resist or antagonize ...; to contend against; to confront; resist; withstand,” Webster’s New International Dictionary 1710 (2d ed. 1957). Although these actions entail varying expenditures of energy, “resist frequently implies more active striving than OPPOSE.” Ibid.; see also Random House Dictionary of the English Language 1359 (2d ed. 1987) (defining “oppose” as “to be hostile or adverse to, as in opinion”).
The statement Crawford says she gave to Frazier is thus covered by the opposition clause, as an ostensibly disapproving account of sexually obnoxious behavior toward her by a fellow employee, an answer she says antagonized her employer to the point of sacking her on a false pretense. Crawford’s description of the louche goings-on would certainly qualify in the minds of reasonable jurors as “resist[ant]” or “antagonistic]” to Hughes’s treatment, if for no other reason than the point argued by the Government and explained by an EEOC guideline: “When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication” virtually always “constitutes the employee’s opposition to the activity.” Brief for United States as Amicus Curiae 9 (citing 2 EEOC Compliance Manual §§8-II-B(l), (2), p. 614:0003 (Mar. 2003)); see also Federal Express Corp. v. Holowecki, 552 U. S. 389, 399 (2008) (explaining that EEOC compliance manuals “reflect ‘a body of experience and informed judgment to which courts and litigants may properly resort for guidance’ ” (quoting Bragdon v. Abbott, 524 U. S. 624, 642 (1998))). It is true that one can imagine exceptions, like an employee’s description of a supervisor’s racist joke as *277 hilarious, but these will be eccentric cases, and this is not one of them.[2]
The Sixth Circuit thought answering questions fell short of opposition, taking the view that the clause “ ‘demands active, consistent “opposing” activities to warrant. . . protection against retaliation/” 211 Fed. Appx., at 376 (quoting Bell, supra, at 610), and that an employee must “instigat[e] or initiat[e]” a complaint to be covered, 211 Fed. Appx., at 376. But though these requirements obviously exemplify opposition as commonly understood, they are not limits of it.
“Oppose” goes beyond “active, consistent” behavior in ordinary discourse, where we would naturally use the word to speak of someone who has taken no action at all to advance a position beyond disclosing it. Countless people were known to “oppose” slavery before Emancipation, or are said to “oppose” capital punishment today, without writing public letters, taking to the streets, or resisting the government. And we would call it “opposition” if an employee took a stand against an employer’s discriminatory practices not by “instigating” action, but by standing pat, say, by refusing to follow a supervisor’s order to fire a junior worker for discriminatory reasons. Cf. McDonnell, supra, at 262 (finding employee covered by Title VII of the Civil Rights Act of 1964 where his employer retaliated against him for failing to prevent his subordinate from filing an EEOC charge). There is, then, no reason to doubt that a person can “oppose” by responding to someone else’s question just as surely as by provoking the discussion, and nothing in the statute requires *278 a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.
Metro and its amici support the Circuit panel’s insistence on “active” and “consistent” opposition by arguing that the lower the bar for retaliation claims, the less likely it is that employers will look into what may be happening outside the executive suite. As they see it, if retaliation is an easy charge when things go bad for an employee who responded to enquiries, employers will avoid the headache by refusing to raise questions about possible discrimination.
The argument is unconvincing, for we think it underestimates the incentive to enquire that follows from our decisions in Burlington Industries, Inc. v. Ellerth, 524 U. S. 742 (1998), and Faragher v. Boca Raton, 524 U. S. 775 (1998). Ellerth and Faragher hold “[a]n employer . . . subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with ... authority over the employee.” Ellerth, supra, at 765; Faragher, supra, at 807. Although there is no affirmative defense if the hostile environment “culminates in a tangible employment action” against the employee, Ellerth, 524 U. S., at 765, an employer does have a defense “[w]hen no tangible employment action is taken” if it “exercised reasonable care to prevent and correct promptly any” discriminatory conduct and “the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise,” ibid. Employers are thus subject to a strong inducement to ferret out and put a stop to any discriminatory activity in their operations as a way to break the circuit of imputed liability. Ibid.; see also Brief for Petitioner 24-28, and nn. 31-35 (citing studies demonstrating that Ellerth and Faragher have prompted many employers to adopt or strengthen procedures for investigating, preventing, and correcting discrimi *279 natory conduct). The possibility that an employer might someday want to fire someone who might charge discrimination traceable to an internal investigation does not strike us as likely to diminish the attraction of an Ellerth-Faragher affirmative defense.
That aside, we find it hard to see why the Sixth Circuit’s rule would not itself largely undermine the Ellerth-Faragher scheme, along with the statute’s “‘primary objective’” of “avoiding] harm” to employees. Faragher, supra, at 806 (quoting Albemarle Paper Co. v. Moody, 422 U. S. 405, 417 (1975)). If it were clear law that an employee who reported discrimination in answering an employer’s questions could be penalized with no remedy, prudent employees would have a good reason to keep quiet about Title VII offenses against themselves or against others. This is no imaginary horrible given the documented indications that “[f]ear of retaliation is the leading reason why people stay silent instead of voicing their concerns about bias and discrimination.” Brake, Retaliation, 90 Minn. L. Rev. 18, 20 (2005); see also id., at 37, and n. 58 (compiling studies). The appeals court’s rule would thus create a real dilemma for any knowledgeable employee in a hostile work environment if the boss took steps to assure a defense under our cases. If the employee reported discrimination in response to the enquiries, the employer might well be free to penalize her for speaking up. But if she kept quiet about the discrimination and later filed a Title VII claim, the employer might well escape liability, arguing that it “exercised reasonable care to prevent and correct [any discrimination] promptly” but “the plaintiff employee unreasonably failed to take advantage of . . . preventive or corrective opportunities provided by the employer.” Ellerth, supra, at 765. Nothing in the statute’s text or our precedent supports this catch-22.[3]
*280 Because Crawford’s conduct is covered by the opposition clause, we do not reach her argument that the Sixth Circuit misread the participation clause as well. But that does not mean the end of this case, for Metro’s motion for summary judgment raised several defenses to the retaliation charge besides the scope of the two clauses; the District Court never reached these others owing to its ruling on the elements of retaliation, and they remain open on remand.
Ill
The judgment of the Court of Appeals for the Sixth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

 Because this case arises out of the District Court’s grant of summary judgment for Metro, “we are required to view all facts and draw all reasonable inferences in favor of the nonmoving party, [Crawford].” Brosseau v. Haugen, 543 U. S. 194, 195, n. 2 (2004) (per curiam).

 Metro suggests in passing that it was unclear whether Crawford actually opposed Hughes’s behavior because some of her defensive responses were “inappropriate,” such as telling Hughes to “bite me” and “flip[ping] him a bird.” Brief for Respondent 1-2 (internal quotation marks omitted). This argument fails not only because at the summary judgment stage we must “view all facts and draw all reasonable inferences in [Crawford’s] favor,” Brosseau, 543 U. S., at 195, n. 2, but also because Crawford gave no indication that Hughes’s gross clowning was anything but offensive to her.

 Metro also argues that “[Requiring the employee to actually initiate a complaint. .. conforms with the employee’s ‘obligation of reasonable care to avoid harm’ articulated in Faragher and Ellerth.” Brief for Respond *280 ent 28 (quoting Faragher v. Boca Raton, 524 U. S. 775, 807 (1998)). But that mitigation requirement only applies to employees who are suffering discrimination and have the opportunity to fix it by “tak[ing] advantage of any preventive or corrective opportunities provided by the employer,” 524 U. S., at 807; it is based on the general principle “that a victim has a duty ‘to use such means as are reasonable under the circumstances to avoid or minimize . . . damages,’ ” id,., at 806 (quoting Ford Motor Co. v. EEOC, 458 U. S. 219, 231, n. 15 (1982)). We have never suggested that employees have a legal obligation to report discrimination against others to their employer on their own initiative, let alone lose statutory protection by failing to speak. Extending the mitigation requirement so far would make no sense; employees will often face retaliation not for opposing discrimination they themselves face, but for reporting discrimination suffered by others. Thus, they are not “victims” of anything until they are retaliated against, and it would be absurd to require them to “mitigate” damages they may be unaware they will suffer.