[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 18, 2010
JOHN LEY
CLERK

No. 09-13419
Non-Argument Calendar

_____

D. C. Docket No. 08-20603-CV-JEM

DR. KATHERINE MURPHY,

Plaintiff-Appellant,

versus

CITY OF AVENTURA,
a municipality governed under the
laws of the State of Florida,
AVENTURA CITY OF EXCELLENCE SCHOOL,
a public school and agent of the
City of Aventura,
CHARTER SCHOOLS USA, INC.
a Florida corporation,
CHARTER SCHOOLS USA AT AVENTURA, LLC,
a Florida limited liability company,
ERIC SOROKA,
in his official and an individual capacities,
TERESA SOROKA,
an individual, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 18, 2010)

Before CARNES, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Katherine Murphy appeals the summary judgment in favor of her former employer, the City of Aventura, and against her complaint of sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), and the dismissal without prejudice of her claims under state law. We affirm.

In April 2003, the City hired Murphy as principal of the Excellence School in Miami, Florida. For the next three years and eight months, Murphy was supervised by Eric Soroka, the City Manager. Soroka terminated Murphy in December 2006.

Murphy filed a complaint against Soroka, the City, its clerk, Teresa Soroka, the Aventura City of Excellence School and its business manager, Nicole Monroe, and the Charter School companies. Murphy complained of sexual harassment and retaliation in violation of Title VII, and Murphy asserted several claims under state

2

law.

Murphy described eleven different incidents in which Soroka allegedly harassed her about her work performance: (1) in April 2003, after Murphy offered to let a city commissioner teach some lessons at the school, Soroka called Murphy a "dumb shit," prohibited her from inviting commissioners to the school, and told her that "[i]t's fucking inappropriate for you to talk to them"; (2) also in April, after Murphy talked to Elaine Adler, the President of the Aventura Marketing Council, Soroka instructed Murphy to cease contact with Adler and told Murphy that she was a "stupid fuck" who failed to "get [the] message that [she was] not to do this"; (3) in May 2003, after Murphy talked to a second city commissioner, Soroka told Murphy that "[y]ou directors do not talk" and called Murphy a "stupid shit" and a "dumb fuck"; (4) Soroka screamed and yelled at Murphy when a parent complained about the school; (5) Soroka "would call [Murphy] if there was an event at the school . . . and two commissioners were in the same building at the same time and call . . . her words like you slut" or "you goddamn fuck-up and ask her, can't you get this?"; (6) Soroka called Murphy a "dumb fuck" for the way she had addressed requests by parents for more input at board meetings and in the school; (7) Soroka would appear at a school advisory meeting in a "bad" mood and insult Murphy by saying things like "you dumb shit, you stupid fuck, you fucked

3

up, how come you can't do this, why can't you control staff, an idiot could take care of this, . . . you have the mindlessness of a hooker"; (8) Soroka accused Murphy of meeting commissioners for dinner, accused her of not learning her lesson, called her a "dumb shit," threatened to fire her, and warned her that if she had lied about the assemblage being coincidental that she "was fucked"; (9) in 2005, Soroka called Murphy a "goddamn slut" after reading an article about her in the newspaper that he had not approved; (10) while Murphy was conducting a parent-teacher conference in the Spring of 2006, Soroka called and told Murphy that she was a "stupid shit . . . you slut, how can you do this? . . . Don't you goddamn learn your lessons"; and (11) in the Summer of 2006, Soroka called Murphy a "goddamn stupid fuck" after she refused to give student records to Soroka's wife.

Murphy described five incidents in which Soroka allegedly harassed her about her personal life: (1) Soroka called Murphy about having dinner with Luz Weinberg, a city commissioner in the midst of her second divorce, and Soroka said the women looked like hookers; (2) after learning Murphy had gone to dinner with Weinberg a second time, Soroka told Murphy that she looked like a "whore to be with her, because . . . [Weinberg] looks like a slut as well, out when she's working on her second divorce"; (3) Soroka told Murphy that dining in a restaurant alone

4

made her look like a "whore"; (4) Soroka ridiculed and used vulgar language with Murphy after she, city commissioners, and the mayor attended a charity event for a child who had been killed in Israel; and (5) Soroka also ridiculed Murphy about attending a charity event for cystic fibrosis at which city commissioners and the mayor were present. Murphy alleged that Soroka had called her a "stupid bitch," but Murphy did not explain where, when, or why the comment was made. Murphy also alleged that, in June or July of 2003 after Soroka overheard a mother remark that her buxom daughter could not wear a school uniform, Soroka stated in Murphy's presence, "[w]ouldn't all women love to have that problem."

All the defendants moved for summary judgment. The City argued that Soroka did not sexually harass Murphy because the majority of Soroka's remarks were gender-neutral, and the other remarks were not sufficiently pervasive or severe and did not interfere with Murphy's job performance. The City also argued that Soroka fired Murphy, not in retaliation, but because she had violated the school enrollment policy by admitting former student Jake Norman before other children on the waiting list; she had accepted money from Norman's parents to expedite his admission; and she had misappropriated school funds.

The district court granted summary judgment in favor of the City and <u>sua sponte</u> dismissed without prejudice Murphy's complaints that the Charter School

5

companies, the Sorokas, and Monroe had violated state law. The district court ruled that Murphy failed to establish that she was subject to a hostile work environment. The district court found that nine of the eighteen remarks described by Murphy constituted "generalized profanity and insults." The district court also found that Murphy failed to establish that Soroka "singled out females as the targets for" the profanity based on statements by Judy Appelgren, Soroka's assistant, and Ginger Kimnick that Soroka routinely and indiscriminately cursed at male and female employees. The district court found that the remaining nine remarks, although sex-based and offensive, did not rise to the level of sexual harassment because they were of "limited frequency," having occurred over two years and eight months; were not severe; were not physically threatening and were not humiliating; and did not "unreasonably interfere" with Murphy's work performance. The district court also ruled that Murphy failed to establish a prima facie case of retaliation. The district court determined that Murphy failed to establish that she had complained about gender-based discrimination and, in the alternative, she lacked an objectively reasonable belief that she was subject to a hostile work environment based on sexual harassment.

Murphy argues that Soroka's remarks, particularly his gender-specific remarks, created a debatable issue about whether she was a victim of sexual

6

harassment, but we disagree. The district court was entitled to conclude that Soroka's remarks that Murphy was a "dumb shit," "stupid fuck," and "dumb fuck," fell "under the rubric of general vulgarity that Title VII does not regulate." Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 810 n.4 (11th Cir. 2010) (en banc). The record establishes that Soroka also employed these vulgarities to criticize male employees. Although Soroka's use of terms like "slut," "whore," "bitch," "hooker," and his remark about a young student's bust size were no doubt degrading and sex based, Soroka's nine remarks, made over the course of over three years, were neither severe nor pervasive. Murphy also failed to produce evidence that Soroka's conduct unreasonably interfered with her work performance. Soroka rated Murphy's job performance as excellent or exemplary, and in October 2006, Soroka awarded Murphy a raise and a written commendation. Murphy argues that Soroka's remarks caused her to suffer nightmares, depression, and anxiety, but Murphy testified that these symptoms did not surface until a month after she was terminated. The district court correctly granted summary judgment in favor of the City and against Murphy's complaint of sexual harassment.

Murphy argues that her complaints about Soroka's comments constituted protected activity that supports a claim of retaliation, but again we disagree.

Murphy failed to provide any evidence that she engaged in statutorily protected activity. "A complaint about an employment practice constitutes protected opposition only if the individual explicitly or implicitly communicates a belief that the practice constitutes unlawful employment discrimination." EEOC Compl. Man. (CCH) §§ 8-II-B(2) (2006); see Crawford v. Metro. Gov't, 129 S. Ct. 846, 851 (2009) (using the EEOC manual in interpreting the opposition clause of the antiretaliation statute). Murphy testified that she asked Soroka to stop bullying her and that she complained to a former supervisor, Soroka's assistant, and a city commissioner that Soroka had used "vulgar, inappropriate language," and engaged in "bullying, yelling, [and] screaming." Murphy failed to report Soroka's conduct, formally or informally, to her employer, and Murphy acknowledged that she did not complain to Soroka's assistant or the city commissioner that Soroka's conduct was sexually hostile or sexually harassing. The district court correctly entered summary judgment against Murphy's complaint of retaliation.

Murphy lastly argues that the dismissal without prejudice of her state law claims "unfairly works an injustice . . . by requiring her to begin anew in state court," but the district court did not abuse its discretion by dismissing these claims. There was no reason for the district court to exercise supplemental jurisdiction over the state law claims after the court dismissed the federal claims over which it had

8

original jurisdiction. We, in fact, "encourage[ ] district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004).

We **AFFIRM** the summary judgment in favor of the City of Aventura and the dismissal without prejudice of Murphy's state law claims.