NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1754
_____

JAMES FULMER,
                              Appellant

v.

COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA STATE POLICE;
JEFFREY B. MILLER; FRANK MONACO, and; HARVEY COLE, JR.
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. Civil Action No. 08-cv-01630
(Honorable David Stewart Cercone)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 9, 2012
Before:  SCIRICA, RENDELL and SMITH, *Circuit Judges*.

(Filed:  February 2, 2012)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

    Retired police lieutenant James Fulmer appeals from the grant of summary

judgment on his claim that the Pennsylvania State Police violated his First Amendment

rights by retaliating against him for statements he made at work. At issue is whether

Fulmer spoke pursuant to his official duties. If so, the Constitution does not insulate his speech from employer discipline.

I.

Fulmer bases his First Amendment retaliation claim on statements he made in internal complaints and misconduct investigations while he held the position of Crime Section Commander with a police troop in Greensburg, Pennsylvania. We recite the facts in the light most favorable to plaintiff.[1]

The first statements alleged by Fulmer arose out of his concerns about the professional shortcomings and misconduct of Sergeant George Emigh, a subordinate officer. In late 2005, Fulmer reported Emigh's questionable behavior to his superior officers, Captain Harvey Cole, Jr., and Major Frank Monaco. Monaco came to Emigh's defense, praising him as "an outstanding individual" and "the best Crime Sergeant in the state."

Several months later, Magisterial District Judge Suzanne Steffee informed Fulmer that she had been sexually harassed by Emigh. Fulmer initiated a formal complaint process, as required by State Police regulations. Based on an interview with Steffee, Fulmer submitted a six-page report to Lieutenant Dale Blasko. Monaco responded to the complaint with a flippant remark about the alleged sexual harassment and indicated to Fulmer that he should not pursue the matter. Because the Steffee complaint involved a possible violation of the State Police's sexual harassment policy, it was reviewed by

---

[1] Although Fulmer asserts that his claim rests on statements he made in just two internal investigations, we consider additional statements in the record.

Lieutenant Martin Henry, a State Police Equal Employment Opportunity Officer. When Lieutenant Henry learned of Monaco's dismissive statements, internal proceedings were instituted against Monaco. In these proceedings, Fulmer conveyed Monaco's objectionable statements to the investigating officer, Lieutenant Donald Carnahan. Carnahan shared Fulmer's interview responses and additional critical statements in Fulmer's journal notes with Monaco.

In October 2006, while the Steffee complaint was under investigation, Emigh filed his own internal affairs complaint against Fulmer for making derogatory remarks about him. In an interview on this matter, Fulmer complained to investigators about Emigh's professional shortcomings and suggested that Emigh was protected against discipline by Cole and Monaco.

In yet another investigation, the State Police Internal Affairs Department reviewed a civilian complaint stemming from a physical altercation between civilians and State Police members in the Greensburg Barracks. During this internal investigation, Fulmer accused Captain Cole of placing the civilian complaint investigation on hold.

In March 2007, Captain Cole telephoned Fulmer to inform him that he was to be removed from his position as Crime Section Commander. Cole indicated that the removal was based on statements Fulmer made in internal investigations. Some months later, Fulmer received a negative employee performance review, which referenced some of those statements. This performance review was deleted when Fulmer challenged it in a grievance.

Shortly after his retirement in August 2008, Fulmer commenced this civil rights action under 42 U.S.C. § 1983, seeking redress for workplace retaliation in violation of the First Amendment and Title VII. The District Court dismissed Fulmer's claims against the Pennsylvania State Police, Commissioner Jeffrey Miller, Major Frank Monaco, and Captain Harvey Cole, Jr., for actions taken in their official capacities. It also dismissed his Title VII claim. This appeal challenges the grant of summary judgment on Fulmer's remaining First Amendment retaliation claim against the individual defendants in their individual capacities.[2]

II.

The First Amendment protects a public employee against retaliation when the employee speaks as a citizen on a matter of public concern and the government employer does not have an adequate justification for its negative employment action. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006). But "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*,

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of summary judgment. *Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 415 (3d Cir. 2011). Summary judgment is proper where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id*.

547 U.S. at 421.[3] *Garcetti* directs us to consider, as a threshold question, whether the employee spoke pursuant to official duties.

We considered this question in *Foraker v. Chaffinch*, 501 F.3d 231 (3d. Cir. 2007), *abrogated on other grounds by Borough of Duryea v. Guarnieri*, 131 S.Ct. 2488 (2011). There, we held that three Delaware State Police firearms instructors were not entitled to First Amendment protection for their complaints to supervisors about unsafe conditions at the firing range where they worked. When the officers reported safety problems at the range to supervisors, they spoke, not as citizens, but pursuant to their official duties. *Id.* at 243.

As the officers in *Foraker* "were expected . . . to report problems concerning the operations at the range up the chain of command[,]" *id.* at 241, Fulmer was expected to report misconduct by fellow officers to his supervisors and to participate in internal investigations. Each of the statements on which his claim is premised was made either to a superior officer or to an officer assigned to conduct an internal investigation. His statements were based on information acquired in his role as Crime Section Commander and involved alleged misconduct by fellow officers. In making these statements, Fulmer was carrying out his duties under police regulations to "promptly report to [his] supervisor[] any information which comes to [his] attention and which tends to indicate that any member or employee has violated any law, rule, regulation, or order" and "to

---

[3] Fulmer's reliance on *Crawford v. Metropolitan Government of Nashville & Davidson County*, 555 U.S. 271 (2009), is misplaced. That case considered a retaliation claim premised on Title VII, not the First Amendment.

truthfully and completely answer all questions" in internal investigations.[4] Upon reviewing the context and content of Fulmer's statements, we conclude that he spoke pursuant to his official duties.[5]

For the foregoing reasons, we will affirm the District Court's grant of summary judgment.

---

[4] *Garcetti* cautions that "formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform . . . ." 547 U.S. at 424-25. On this record, we are convinced that the quoted police regulations provide a fair statement of Fulmer's actual employment expectations.

[5] Fulmer's claim that the police internal affairs process is no different from any other employer investigatory process does not mean that in this forum employees speak as citizens. If anything, it suggests the opposite: that they speak pursuant to their official duties as employees.