LOHIER, Circuit Judge,
concurring:
I agree completely with the majority opinion relating to Townsend. I also reluctantly concur in its decision to affirm the dismissal of Grey-Allen’s claim under Title VII of the Civil Rights Act of 1964. I write separately to explain that affirming requires reference to the legislative history of Title VII’s anti-retaliation provision because the text is ambiguous. I also write to suggest that Congress should act to clarify Title VII if it desires to prohibit private employers from retaliating against employees merely because they participate in internal investigations of discrimination complaints prior to any involvement by the EEOC.
Title VII’s anti-retaliation provision, section 704(a), has two distinct clauses forbidding retaliation against employees engaged in protected activity: the opposition clause and the participation clause. The opposition clause makes it “unlawful ... for an employer to discriminate against any ... employee[ ] ... because he has opposed any practice made unlawful ... by this subchapter,” while the participation clause makes it unlawful for an employer to discriminate against any employee “because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.” 42 U.S.C. § 2000e-3(a).
Although there may be some question about whether Grey-Alien “opposed” any *61 unlawful employment practice (a question to which I turn below), she accused her employer of violating only the participation clause. Similarly, on appeal, Grey-Allen’s employer relied solely on its assertion that the participation clause does not apply to internal investigations. There was strong evidence that it fired Grey-Alien for no reason other than that she conducted an effective internal investigation of a sexual harassment claim against a corporate vice-president. I begin, therefore, with the following question: Does the participation clause allow a private employer to fire a human resources director or EEO officer because she conducted a neutral investigation of an employee’s discrimination claim without involving the EEOC?
Congress has never directly confronted the issue of whether private-sector employees who undertake these important investigations are protected from retaliation under the participation clause. The Supreme Court explicitly left open the question of whether the participation clause protects these employees in Crawford v. Metropolitan Government of Nashville & Davidson County, Tennessee, 555 U.S. 271, 129 S.Ct. 846, 172 L.Ed.2d 650 (2009), even as it answered a similar question in the context of the opposition clause. Ultimately, the statutory text and legislative history of Title VII persuade me that the majority opinion correctly resolved this question in favor of the employer in this case, although I arrive at that conclusion using a different route.
I start with the text of the statute. I agree with my colleagues that the phrase “investigation ... under this subchapter” clearly includes EEOC investigations. I disagree, however, that the phrase, which should be interpreted broadly, unambiguously excludes internal investigations conducted by employers. See EEOC v. Total Sys. Servs., Inc., 240 F.3d 899, 901 (11th Cir.2001) (dissent from denial of rehearing in banc). First, certain provisions of Title VII — the “subchapter” to which the clause refers[1] — suggest a role for non-governmental enforcement of the statute. For example, section 705(g)(1) of Title VII authorizes the EEOC to “cooperate with and ... utilize regional, State, local, and other agencies, both public and private, and individuals.” 42 U.S.C. § 2000e-4(g)(l). Second, other provisions of Title VII expressly limit the term “investigation” to an investigation by the EEOC, indicating that Congress clearly could and did refer solely to EEOC investigations when it intended to do so. See id. § 2000e-5(b) (referring to “investigation by [the] Commission”); id. § 2000e-8(a) (referring to “any investigation of a charge filed under [the EEOC’s enforcement provision] of this title [section 706]”); id. § 2000e-9 (referring to “investigations conducted by the Commission or its duly authorized agents or agencies”). As a result, I conclude that the phrase “investigation ... under this subchapter” is ambiguous, and I proceed to the legislative history to determine what Congress meant by it. See SEC v. Rosenthal, 650 F.3d 156, 161 (2d Cir.2011).
Congress appears to have had only government investigations in mind in 1964. There is no indication in the legislative history of Title VII that Congress meant to include internal investigations by private employers in the participation clause. I recognize that “when it originally enacted Title VII, Congress hoped to encourage employers to comply voluntarily with the act,” EEOC v. Shell Oil Co., 466 U.S. 54, 77, 104 S.Ct. 1621, 80 L.Ed.2d 41 *62 (1984), but Congress does not appear to have embraced internal investigations as a way to do so. It did not once mention internal investigations by private employers in the debates and speeches leading up to the enactment of Title VII or in subsequent major amendments to the statute. This is not surprising since, as the EEOC acknowledged at oral argument, it appears that “there really weren’t” such investigations prior to 1964. Tr. of Oral Arg. at 17:11-19. They also appear not to have been among Congress’s concerns in subsequent major amendments to Title VII in 1972, 1978 and 1991. Instead, it seems that Congress focused on protecting employees who participated in EEOC investigations, other federal-sector investigations,[2] or analogous state-sponsored investigations. Without evidence that private-sector internal investigations existed and that Congress considered them at the time it enacted Title VII, I am hard pressed to conclude from the legislative history that Congress intended to include these investigations in the ambit of the participation clause.
Even the EEOC’s interpretation of the participation clause, as reflected in its Compliance Manual, is of little help to Grey-Alien. While not entitled to full deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the manual and other EEOC directives nevertheless “reflect a ‘body of experience and informed judgment to which courts and litigants may properly resort for guidance,’ ” and are “entitled to a ‘measure of respect’ under the less deferential Skidmore standard.” Fed. Express Corp. v. Holowecki, 552 U.S. 389, 399, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008); see also Crawford, 555 U.S. at 276, 129 S.Ct. 846. Although the EEOC argued as amicus on appeal that it has long regarded internal investigations as covered by the participation clause, see Br. of EEOC as Amicus Curiae in Supp. of Appellant Grey-Alien 19, the EEOC’s Compliance Manual does not state that the participation clause covers activity undertaken in the course of an internal investigation by an employer. The manual’s guidance about whether an individual is protected *63 under the participation clause does not mention internal investigations, referring instead to “individuals [who] challeng[e] employment discrimination under the statutes enforced by EEOC in EEOC proceedings, in state administrative or court proceedings, as well as in federal court proceedings, and to individuals who testify or otherwise participate in such proceedings.” 2 EEOC Compliance Manual § 8-II-C, p. 614.0005 (May 1998); see id. § 2-II-A, p. 605.0005 (2008) (referring the reader to the 1998 EEOC Compliance Manual for more detailed guidance on protected activity).[3] To be sure, the manual states that “[protected activity [under section 704(a) ] ... includes ... presenting evidence as part of an internal investigation pertaining to an alleged EEO violation.” Id. § 2-II-A, p. 605.0005. But it justifies its interpretation by reference to the opposition clause rather than the participation clause. See id. n. 41.
For these reasons, I am compelled to agree with the decision to affirm the judgment of the District Court. As a policy matter, however, the distinction between investigations in which the government is involved and internal investigations strikes me as antiquated and arbitrary. The facts of this case starkly illustrate the arbitrariness. Had Grey-Alien conducted her investigation under the auspices of a government agency such as the EEOC, her actions would have been protected under the participation clause. But because she conducted the same internal investigation without EEOC involvement, her actions are not protected.
Changes in the last decade to the enforcement and interpretation of Title VII underscore the wisdom of eliminating this distinction and protecting employees who participate in private-sector internal investigations. In particular, Faragher v. Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 638 (1998), represent a significant shift in the Title VII landscape, and the changes wrought by both cases are now woven into governmental and corporate equal employment opportunity practices. Internal investigations form an integral part of Title VII today, with or without the formal involvement of the EEOC — so much so that the Supreme Court has interpreted Title VII broadly to avoid “undermin[ing] the Ellerth-Faragher scheme, along with the statute’s ‘primary objective’ of ‘avoiding] harm’ to employees.” Crawford, 555 U.S. at 279, 129 S.Ct. 846 (emphasis added) (quoting Faragher, 524 U.S. at 806, 118 S.Ct. 2275).
I recognize that the conclusion that the majority and I draw from the text, legislative history, and agency interpretations of *64 Title VII is in tension with these recent developments and with the principle that, when reviewing Title VII, we should broadly interpret the phrase “under this subchapter.” See Thompson v. N. Am. Stainless, LP, — U.S. —, 131 S.Ct. 863, 868, 178 L.Ed.2d 694 (2011) (“Title VII’s anti-retaliation provision must be construed to cover a broad range of employer conduct.”). But it is up to Congress, now accustomed to the centrality of internal investigations in the employment context as a result of these developments, to consider the issue. Congress is best placed to fill this statutory gap between the text and history of the participation clause on the one hand, and Title VII’s broad anti-retaliation goals on the other hand. It may decide to do so by clarifying that the participation clause prohibits private employers from firing their human resources directors and EEO officers simply because they have conducted an internal investigation of, say, a sexual harassment complaint.
I have two final observations. First, in agreeing that Grey-Alien was not protected from retaliation under the participation clause as Congress conceived it in 1964, the majority and I take some solace in the possibility that, after Crawford, employees in Grey-Allen’s position will be protected by the opposition clause. That remains to be decided; whether a human resources director who neutrally investigates a claim of discrimination nevertheless can be said to “oppose” a discriminatory practice is an open question in this Circuit. Second, when Congress enacted Title VII, it was aware of the existence of state agencies like the New York State Division of Human Rights (“NYSDHR”), and it authorized the newly created EEOC “to cooperate with and ... utilize regional, State, local, and other agencies.” 42 U.S.C. § 2000e-4(g)(l); see United States Equal Employment Opportunity Commission, Legislative History of Titles VII and XI of Civil Rights Act of 1961, 3044-45 (1968) (interpretative memorandum introduced into congressional record by Senators Clark and Case, the Senate floor managers for Title VII). Moreover, it contemplated that the EEOC and, by extension, analogous state agencies would provide “technical assistance” to employers who requested it to “further their compliance with” Title VII. 42 U.S.C. § 2000e-4(g)(3). In this case, Grey-Alien sought and received advice from the NYSDHR on proceeding with the sexual harassment investigation. In my view, involving a state agency such as the NYSDHR was enough to transform the internal investigation into an “investigation ... under this subchapter.” 42 U.S.C. § 2000e-3(a). The majority opinion does not suggest anything to the contrary. Grey-Alien, however, never advanced this argument before the District Court, and she therefore forfeited it. See Local 377, RWDSU, UFCW v. 1861 Tenants Ass’n, 533 F.3d 98, 99 (2d Cir.2008) (finding an argument not raised before the district court forfeited on appeal); Tr. of Oral Arg. at 5:6-24, 8:12-20, 21:12-22:3. Even with these two possible forms of protection, however, Congress should clarify whether the kind of investigation Grey-Alien conducted falls within the protective sweep of the participation clause.

. Title VII is codified as Subchapter VI of Chapter 21 of Title 42 of the United States Code.

. As originally enacted in 1964, Title VII did not apply to federal employees. "Instead, employment discrimination claims brought by federal employees were governed by Executive Orders and agency regulations. In general, a federal agency accused of discrimination would investigate the claim, conduct a hearing and render a final decision. ...” Pueschel v. United States, 369 F.3d 345, 352 (4th Cir.2004). As Congress was surely well aware in 1964, federal regulations in place pursuant to Executive Order No. 10590, 20 Fed.Reg. 409 (Jan. 19, 1955), directed the heads of each federal department or agency to designate an Employment Policy Officer (later changed to an Equal Employment Opportunity, or "EEO,” Officer), who was required to conduct prompt internal "investigation[s] of each complaint” "of alleged discrimination in personnel matters within his department or agency.” 5 C.F.R. §§ 1401.4, 1401.17 (1964); see 5 C.F.R. § 713.204(d)(4) (1968) (designating EEO Officers to investigate complaints within federal agencies). These internal federal agency investigations continued after Congress amended Title VII by passing the Equal Employment Opportunity Act of 1972 (the "EEOA”) to extend its coverage to most federal employees. See 42 U.S.C. § 2000e-16; 117 Cong. Rec. 32,105 (1971); S.Rep. No. 92-415, at 14 (1971), reprinted in Senate Subcommittee on Labor of the Committee on Labor and Public Welfare, Legislative History of the Equal Employment Opportunity Act of 1972, at 423 (1972) ("Under present procedures, in most cases, each [federal] agency is still responsible for investigating ... itself.”). For these reasons, the phrase "investigation ... under this subchapter" appears to include internal investigations of discrimination conducted by federal agencies through EEO Officers.

. In contrast to the current manual, which does not state that cooperating with internal investigations is protected by the participation clause, an archived page of the EEOC's website cites “[c]ooperating with an internal investigation of alleged discriminatory practices” as an example of protected activity under the participation clause. Retaliation, http://archive.eeoc.gov/types/retaliation.html (last modified Mar. 11, 2009). Of course, the EEOC, like any other agency, is entitled to change its mind and change course. But the argument that it advances in its amicus brief (an argument that accords with the March 2009 archived website page referenced above) differs from its published, official interpretation of the participation clause, and it offers no support for its assertion that it has long adopted a more expansive interpretation of the participation clause. In the absence of a reasoned analysis explaining why its position differs from that set out in the Compliance Manual, the EEOC's new argument is " 'entitled to considerably less deference’ than a consistently held agency view.” Am. Fed’n of State, Cnty. & Mun. Emps. v. Am. Int'l Grp., Inc., 462 F.3d 121, 129 (2d Cir.2006) (quoting Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 515, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994)).