NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0211n.06
Case No. 19-5451

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Apr 15, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ZOUHEIR HAMADE, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| VALIANT GOVERNMENT SERVICES, LLC, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |

_____/

Before: MERRITT, CLAY, and GRIFFIN, Circuit Judges.

**MERRITT, Circuit Judge.** Plaintiff Zouheir Hamade appeals the dismissal under Federal Rule of Civil Procedure 12(b)(6) of his Title VII retaliation claim against defendant Valiant Government Services, LLC. Plaintiff, a United States citizen and resident of Florida, was working as a translator on a military base in Iraq when he was fired by Valiant, a Kentucky-based defense contractor. Plaintiff alleges that he was fired in retaliation for participating in an internal investigation by the Army concerning a sexual harassment claim by a civilian female linguist who worked for a different government contractor. Dismissal was warranted as a matter of law because our precedent does not protect activity under the "participation" clause of Title VII unless a claim has been filed with the Equal Employment Opportunity Commission. Plaintiff concedes that there was no pending EEOC charge, and we therefore affirm the judgment of the district court.

**I.**

The following factual allegations are set out in the complaint, and are taken as true for purposes of reviewing the district court's dismissal of plaintiff's claim. In July 2017, plaintiff was hired by defendant Valiant Government Services, LLC, as a full-time Arabic-Iraqi linguist stationed in Iraq. While working in Iraq, plaintiff was approached by a civilian female linguist who worked for a different government contractor. The relationship between the female linguist and plaintiff is not described in the complaint, and it is unknown if she is a United States citizen. The female linguist informed plaintiff that she had been sexually assaulted and asked plaintiff to help her find the proper authority to report the assault. Plaintiff agreed to accompany the female linguist to the offices of the Army Sexual Harassment/Assault Response and Prevention.

While traveling together to report the assault, the plaintiff and female linguist were confronted by Sergeant Major Goodman, a noncommissioned Army officer. At this time, plaintiff learned that Goodman was the woman's alleged assailant. The female linguist told Goodman that she was reporting his harassment and bullying against her. Goodman became angry, and demanded to see plaintiff's identification. Plaintiff refused, stating that he would only give his identification to a higher-ranking officer. Goodman "continued to bully and pressure" plaintiff and the female linguist, raising his voice and drawing a crowd. Complaint ¶ 19. Instead of giving his identification to Goodman, plaintiff gave it to a first lieutenant nearby. The lieutenant, with the help of a fellow commissioned officer identified as Major Dam, listened to the female linguist explain what had occurred. Major Dam then accompanied plaintiff and the female linguist to the office of Colonel Thomas Shuler, where plaintiff and the female linguist were advised to make an appointment for the next day. The next day, plaintiff and the female linguist met with Colonel Shuler to discuss the alleged sexual assault and the identification-withholding situation that had

occurred the night before with Sergeant Goodman. Plaintiff expressed concern to Shuler about retaliation from Goodman regarding plaintiff's refusal to give Goodman his identification during the confrontation the previous day.

The next day, plaintiff learned that Sergeant Goodman had complained to Valiant and recommended that Valiant terminate plaintiff for withholding his identification from Goodman. Plaintiff met with Colonel Shuler two days later to notify Shuler of Goodman's complaint and recommended termination of plaintiff. Colonel Shuler assured plaintiff that no adverse action would be taken against him and promised to provide plaintiff with a "closure statement" within the next two days that would assure plaintiff in writing that no retaliation would occur. Plaintiff waited for the closure statement for two weeks before sending Shuler an email reminding the Colonel of his promise.

The day after he emailed Colonel Shuler, plaintiff received a letter of reprimand from Valiant, stating that the U.S. Army had filed a "complaint" against him because plaintiff had requested a written statement from Colonel Shuler. After the Army filed its complaint against plaintiff, plaintiff alleges that his unit was given orders to watch his performance. Thereafter, formal statements appeared in plaintiff's file relating to "petty," non-performance concerns. *Id.* ¶ 30. Plaintiff alleges that he was told by Valiant's "site manager" that it was not a good time for Valiant employees to raise issues with the Army because Valiant's contract was up for rebidding. *Id.* ¶ 28.

On January 7, 2018, Valiant informed plaintiff that he was being terminated for upsetting an Iraqi General Officer by asking the Iraqi General to "switch seating" with another officer. When plaintiff confronted the Iraqi General about the termination, the General was "astonished by the news of the alleged complaint and vehemently denied having complained to anyone at any time

about [plaintiff]," *id*. ¶ 33, and said that someone must have misinterpreted the joking regarding the seating arrangement. The Iraqi General and another Iraqi officer, General Khalaf, submitted written statements that no such incident happened, and no complaint was ever made.

Later, Valiant's site manager told plaintiff that he had not been terminated because of the chair-switching incident, but because he had "re-open[ed] the case" regarding the sexual assault allegations against Sergeant Goodman. *Id*. ¶ 34. On January 11, 2018, Valiant's deputy program manager informed plaintiff that the main reason for his termination was because plaintiff "refused to provide his identification" to Sergeant Goodman and because he assisted the female linguist in reporting the sexual harassment by Goodman. *Id*. ¶ 37. On January 15, 2018, plaintiff filed a complaint with the Office of the Army Inspector General in Iraq. Valiant was notified of plaintiff's complaint to the Inspector General. Two days after plaintiff filed the complaint with the Inspector General, Valiant's program director in Iraq informed plaintiff that his termination was "at will." Valiant's site manager gave plaintiff a written reprimand that said plaintiff was being disciplined because he had been too friendly with the Iraqi officers. *Id*. ¶ 41.

Four months after his termination, plaintiff filed a charge with the Equal Employment Opportunity Commission. In responding to plaintiff's filing of the EEOC charge, Valiant stated that plaintiff had been terminated because of "his behavior and attitude," "because he was unprofessional and unfit to support the U.S. Government," "because he complained about living conditions," and "because he routinely took issues outside of the proper chain of command and was inappropriate with officers in the Iraqi security forces." *Id*. ¶ 42.

On August 3, 2018, the EEOC dismissed the charge and issued a "Notice of Suit Rights." On November 12, 2018, plaintiff filed a one-count complaint under Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act in federal court, alleging that he had "engaged in

protected activity when he assisted in reporting the sexual harassment and hostile work environment created by Sergeant Major Goodman," and he was subject to adverse action in retaliation for that his assistance. *Id.* ¶¶ 45-49. Valiant filed a motion to dismiss for failure to state a claim because plaintiff failed to plead facts showing that he engaged in protected activity under Title VII or Kentucky law. The district court granted Valiant's motion, finding that plaintiff had not alleged that he had engaged in protected activity as required by Title VII or Kentucky law. *Hamade v. Valiant Gov't Servs., LLC*, No. 5:18-cv-166, 2019 WL 1410904 (W.D. Ky. Mar. 28, 2019). Plaintiff filed a timely notice of appeal.[1]

## II.

The sole issue in this appeal is whether Valiant's alleged retaliation against plaintiff was an "unlawful employment practice" under Title VII. *See* 42 U.S.C. § 2000e-3(a). Plaintiff claims that the retaliation was in response to his allegedly protected activity of "participating" in a military investigation of sexual harassment. The district court found that plaintiff's conduct was not protected activity, and we agree.

To establish a prima face case of retaliation under Title VII, an employee must show "(1) he . . . engaged in protected activity; (2) the employer knew of the exercise of the protected right; (3) an adverse employment action was subsequently taken against the employee; and (4) there was a causal connection between the protected activity and the adverse employment action." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). Only the first prong of the prima facie case of retaliation, deciding whether plaintiff engaged in "protected activity," is at issue in this appeal. An employee may show that he engaged in "protected activity" for purposes

---

[1]Plaintiff's opening brief on appeal addresses only the dismissal of the Title VII claim, so he has waived appeal of the dismissal of the claim under Kentucky law. We note that the outcome would be the same under Kentucky law because the analysis is identical to that conducted under Title VII. *See Brooks v. Lexington-Fayette Urban Cty. Hous. Auth.*, 132 S.W.3d 790, 801-02 (Ky. 2004).

of the Title VII antiretaliation provision by alleging conduct that falls within one of two clauses in the statute, which says it is an "unlawful employment practice for an employer to discriminate against any of his employees . . . [1] because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). The first clause is known as the "opposition clause," and the second as the "participation clause." *Crawford v. Metro. Gov't of Nashville & Davidson Cty.,* 555 U.S. 271, 274 (2009). Plaintiff repeatedly and explicitly, including at oral argument, stated that his argument falls exclusively under the "participation" clause. This concession is fatal to plaintiff's claim.

In *Crawford*, the Supreme Court held that an employee's answer to her employer's question pursuant to the filing of an internal complaint may constitute protected activity under the *opposition* clause of Title VII. *Id*. at 277–78 ("There is . . . no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question."). Addressing only the opposition clause, the Supreme Court held that reporting a harassment claim was "protected activity" under Title VII where the reporting was solicited by the employer rather than volunteered by an employee. *Id.*

In addition to the factual distinctions between *Crawford* and this case, plaintiff did not bring his claim under the opposition clause. Instead, he asserts that he engaged in protected activity under the second clause of the statute, the *participation* clause, because he "made a charge, testified, assisted, or participated in an investigation" by assisting the female linguist in reporting

the alleged sexual assault to the Army and then continuing to assist in the Army's internal investigation. The Supreme Court's *Crawford* decision does not cover plaintiff's conduct. The Supreme Court declined to reach the question of whether Crawford's conduct was covered by the participation clause. *Id*. at 280. Accordingly, we look to our circuit precedent regarding what constitutes protected activity under the participation clause.

We have held that Title VII protects an employee's participation in an employer's internal investigation into allegations of unlawful discrimination *only* where that investigation occurs pursuant to a pending Equal Employment Opportunity Commission charge. In *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 543 (6th Cir. 2003), we held that "Title VII protects an employee's participation in an employer's internal investigation into allegations of unlawful discrimination where the investigation occurs pursuant to a pending EEOC charge." It does not, however, cover "an employee's participation 'in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC;' at a minimum, an employee must have filed a charge with the EEOC or otherwise instigated proceedings under Title VII." *Id*. (quoting *EEOC v. Total Sys. Serv., Inc.*, 221 F.3d 1171, 1174 n.2 (11th Cir. 2000)). Given this precedent concerning the participation clause, which was not disturbed by *Crawford*, plaintiff's sole argument on appeal is to urge us to overrule our earlier decision and to extend the Supreme Court's reasoning in *Crawford* concerning the opposition clause to the participation clause regardless of whether an EEOC charge has been filed. We may not do so. *See, e.g., Miller v. Caudill*, 936 F.3d 442, 447-48 (6th Cir. 2019) ("[P]ublished circuit precedent binds future panels unless (1) we overrule it as an en banc court, or (2) it conflicts with intervening United States Supreme Court precedent.").

We also note that plaintiff's reliance on *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), is misplaced. These cases

address an affirmative defense by an employer to a claim of vicarious liability when a supervisor or coworker harasses a fellow employee. Plaintiff's argument appears to be that the two cases are relevant because they hold that the failure of an employee to take advantage of internal procedures to address harassment by a supervisor or coworker may give rise to an affirmative defense by the employer, so he was thereby protected by Title VII when he reported the harassment to the U.S. Army or Valiant. But Valiant employed neither the alleged harasser nor the female linguist. *Faragher* and *Ellerth* are simply inapposite under the facts of this case.

Plaintiff's role was that of assisting the female linguist to file a complaint through the Army's internal disciplinary system, not with the Equal Employment Opportunity Commission. Plaintiff has explicitly conceded that there was no pending EEOC investigation or charge by him or anyone else at the time of his termination as required by our precedent in order to proceed with a retaliation claim under the participation clause. As such, his complaint fails to state a claim under the participation clause of Title VII.

For the foregoing reasons, we affirm the judgment of the district court.